Fuld, J.
The Appellate Division has reversed the defendant’s conviction of felony murder, for which he was sentenced to life imprisonment, and ordered a new trial on the ground that a number of pretrial statements made by him were improperly received in evidence. Since there was ample proof to support the jury’s verdict of guilt, even without the challenged statements, and since the People acknowledge that at least some of the statements were erroneously admitted, a new trial is required and our sole task upon this appeal is to determine whether .the Appellate Division was right in directing the exclusion of the statements it did, or whether it should have held inadmissible more of the statements — as the defendant insists — or fewer — as the district attorney urges.
The charges against the defendant stemmed from the murder of the proprietor of a store in Merrick, Long Island, who was shot twice, the second shot being the fatal one, with a 12-gauge shotgun on July 16, 1962. During the evening of that day, the defendant, accompanied by a friend, took a plane to Los Angeles and, after renting a car, checked into a motel. Upon being alerted by a call from the friend’s mother as to the defendant’s whereabouts, the Nassau County Police, already having basis for suspecting him of the' crime, requested the Los Angeles Police to apprehend the defendant. At about 11:15 f.m. (Pacific Time) on July 18, several members of that police force repaired to the motel where the defendant was staying and arrested him. After searching the rented car, located in the motel’s adjoining parking lot, and finding two pistols stolen from the murdered man’s store, they took the defendant to the police station and, upon arriving there, notified the Nassau County authorities by telephone of the arrest.
The most damaging evidence against the defendant consisted of a number of oral and written statements made by him during the period starting with his arrest in Los Angeles and ending with his arraignment on the murder charge in Nassau *230 County on the morning of July 22. And, of prime importance is the fact that at one point during this period — to be more precise, in the afternoon of July 19—an attorney by the name of Andrew Wallace telephoned Chief Curran of the Nassau County Police to advise him that he had been retained by the defendant’s parents to represent the defendant and that, knowing that the latter was in police custody in California, he “ didn’t want any statements taken from [him],”
The defendant’s first statement was made at the Los Angeles motel to one of the officers who arrested him. The next, a narrative in the handwriting of the defendant, was taken at the police station after the arrest—at about 3:00 a.m. (P.T.) on July 19 — and was followed, less than an hour later, by a tape recording of a conversation between the defendant and several policemen. Later in the morning of July 19, a warrant for the defendant’s arrest was issued by the District Court of Nassau County and, sometime between 1:00 and 2:00 p.m. of that day, Captain Spahr of the Nassau County Police, armed with the warrant, flew to California to effect the defendant’s return to this State. It was at about the same time but, apparently, after Spahr had left the station house for the airport that the lawyer, Wallace, communicated with Chief Curran. The attorney subsequently made four or five similar telephone calls to the Nassau County police station during that and the following day.
Between the time that Wallace informed Chief Curran of his retention as attorney for the defendant and the latter’s return to Nassau County, the defendant made four more incriminating statements, two while in custody in Los Angeles and two during the plane flight back to New York; of the latter statements, one was to Spahr and the other to a stewardess. Upon the defendant’s arrival in New York, at about 9:30 at night on July 21, he was taken by Spahr directly to the scene of the homicide where he re-enacted the crime and, at the same time, described to the officer how he shot and killed the victim. After this, the defendant was taken to the Nassau County police station and, apparently, while he was incarcerated there, his attorney appeared, again advised Chief Curran that he, rvas the defendant’s lawyer and asked to “ see, him immediately.”. This request was refused and it was not until the next morning, *231 after the defendant had been arraigned, that "Wallace was permitted to confer with his client.
Prior to the arraignment but after the attorney had been denied permission to see the defendant, three more statements were elicited. The first of these was made to a Dr. D’Angelo, a psychiatrist regularly called in on homicide cases by the Nassau County Police, during the course of a psychiatric examination he made of the defendant, apparently at the request of the district attorney, during the early morning hours of July 22. Shortly after this examination, a narrative confession was given by the defendant to Spahr who had it typed and signed. And, finally, a transcribed qucstion-and-answer session between the defendant and an assistant district attorney was taken between 5:12 and 6:15 that morning. It is solely these three statements which the People maintain should have been excluded, under our decision in People v. Donovan (13 N Y 2d 148), on the ground that they were the only statements taken from the defendant after his attorney had sought and been refused access to him by the police.
This is, as the Appellate Division concluded, a far too restrictive reading of Donovan. Our decision in that case undoubtedly requires the exclusion of the inculpatory statements made by the defendant, whether in California, on the plane or in New York, to law enforcement officers — and this includes those made to the psychiatrist (who acted for the police) but not that made to the stewardess — after the attorney Wallace, on the afternoon of July 39, informed Chief Curran that he represented the defendant and did not want any statements taken from him.
While it is true, as the People assert, that in Donovan, and again in People v. Failla (14 N Y 2d 178), what we specifically condemned was the refusal by the police to allow a retained attorney to confer with his client, that may not be taken as the full measure of our holding in those cases. We would undoubtedly have reached the same result in People v. Donovan had the lawyer, rather than having asked to see his client, merely informed the police of his retention and of his desire that no statements be taken from his client and had the police, without telling the suspect about the attorney or of his message, proceeded to question him. Surely, where a person is represented by counsel, whether or not the police may question him *232 in the absence of his attorney should not turn on whether the latter presents himself at the place where his client is in physical custody and expressly requests the opportunity to consult with him. The inappropriateness of such a mechanical and arbitrary requirement is particularly apparent in the present case. Not only was the defendant in custody in Los Angelos when, on July 19, his attorney communicated with the Nassau County Police — thus rendering a request to consult with him impractical, to say the least—but the attorney, according to his testimony, was led to believe by the officer in charge (incorrectly, as it turned out) that his client was to be returned to Nassau County “ the very next day ”. It was on the strength of such advice, the lawyer claimed, that he refrained from going to California to seek to confer with the defendant.
As is manifest, our decision in Donovan sought to prohibit the police from questioning a suspect, in the absence of counsel, after an attorney has been retained to represent him and has apprised the police of his retention. It follows, therefore, that once a retained attorney contacts the police officer in charge and informs him, as in the present case, that he represents the suspect and does not want any statements taken from him, the police are precluded from thereafter questioning him or, if they do, from using against him any statements which he made in the absence of counsel.
As previously noted, the defendant, for his part, urges that the Appellate Division directed the exclusion of too few statements ; that court should, he says, have also ruled out several additional statements which he made before his attorney communicated with the police. Belying on People v. Dorado (394 P. 2d 952, on rehearing 62 Cal. 2d 350, 62 A. C. 350) and certain language in Escobedo v. Illinois (378 U. S. 478, 490 et seq.), the defendant contends that the statements obtained by the police, in the absence of counsel, after his arrest should be held inadmissible, even though he never requested a lawyer and none appeared in his behalf at the time, since he was then the “ prime suspect ” and the object of interrogating him was not to solve a crime but to elicit a confession. At such point, the defendant argues, he became entitled to the aid of counsel (if he so desired) and, accordingly, it was incumbent upon the police to advise him of his right to refrain from answering any questions and also of his right to a lawyer.
*233 The court finds this argument without merit; the majority is of the opinion that the rule heretofore announced in our decisions (see, e.g., People v. Failla, 14 N Y 2d 178, supra; People v. Donovan, 13 N Y 2d 148, supra; People v. Meyer, 11 N Y 2d 162; People v. Noble, 9 N Y 2d 571; People v. Waterman, 9 N Y 2d 561; People v. Di Biasi, 7 N Y 2d 544) should not be extended to render inadmissible inculpatory statements obtained by law enforcement officers from a person who, taken into custody for questioning prior to his arraignment or indictment, is not made aware of his privilege to remain silent and of his right to a lawyer even where it appears that such person has become the target of the investigation and stands in the shoes of an accused. Thus, the court answers in the negative the question posed but not passed upon in People v. Stanley (15 N Y 2d 30, 32). The Chief Judge and I take a different view and would exclude the additional statements which the defendant made after his arrest and before his lawyer communicated with the police. (See People v. Dorado, 62 Cal. 2d 350, 361-363, supra.)
As to the other points advanced by the defendant, we simply note that we have considered them and find them without substance.
The order appealed from should be affirmed.