**UNITED STATES of America ex rel. Dominick SABELLA, Petitioner-Appellant,**

**v.**

**Hon. H. W. FOLLETTE, Warden of Green Haven Prison, Respondent-Appellee.**

**No. 764, Docket 34492.**

United States Court of Appeals, Second Circuit.

Argued May 7, 1970.

Decided Oct. 13, 1970.

Meredith M. Brown, New York City, for relator-appellant.

Hillel Hoffman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, WATERMAN, Circuit Judge, and JAMESON, District Judge.*

LUMBARD, Chief Judge:

Dominick Sabella appeals from the denial of his petition for a writ of habeas corpus by the Southern District of New York.

Sabella was separately tried and convicted in Suffolk County on two indictments, one for robbery and the other for issuing a fraudulent check and for grand larceny. He was sentenced to from 15 to 30 years imprisonment for the robbery, and from 2½ to 5 years for the fraudulent check offense. Sabella

* Sitting by designation.

alleges constitutional error in each of these trials. He claims that the robbery conviction is vitiated because: (1) his rights under the Fifth and Sixth Amendments were violated by the use of oral statements which were both involuntary and inadmissible under Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964); (2) he was denied effective assistance of counsel because the trial court insisted that he proceed to trial without allowing his appointed counsel adequate time to prepare the case; and (3) he was denied due process by the trial court's arbitrary limitation of his right of allocution. The fraudulent check conviction allegedly is invalid because Sabella was denied his right to a speedy trial. Judge Ryan denied all of Sabella's claims. He found that the evidence fairly supported the county judge's conclusions that the confession was voluntary, and that Sabella had not requested the assistance of counsel during questioning. Judge Ryan rejected petitioner's claim that he was denied effective assistance of counsel, noting that a lengthy hearing of this issue was held in the state court in 1967, and that the record amply supported the conclusions reached there. Judge Ryan further found that there was no denial of petitioner's right of allocution. We affirm.

On January 3, 1964, Sabella was picked up by the police and questioned regarding a robbery which had taken place in Deer Park in December, 1963. Sabella was subsequently indicted for his participation in the robbery. Thereafter, the county court held a full and complete hearing on his motion to suppress his confession and the following facts were brought out: About 1:30 P.M. on January 16, 1964, two detectives called Sabella's home and told his wife that they wanted to talk with him when he came home. About 3:00 P.M. Sabella returned the call and said he did not have transportation to the station house and would like to be questioned at home. The detectives replied that they would bring him to the station house; they arrived at Sabella's home about 3:15. Sabella tes-

tified that in the presence of the two detectives he told his wife to call his lawyer, Bernard F. Kass, Esq. He then accompanied the detectives to the police station, where he was told that he had been named as a participant in a robbery and that he could now tell his side of the story. The trial court found that Sabella was formally arrested at about 4:30 P.M., after orally admitting that he had driven a car to and from the scene of the robbery.

Kass, Sabella's attorney at his first and second trials, testified that he had returned to his office about 5:00 on January 16, and was told by his secretary that Mrs. Sabella had called to say that her husband was at the police station and wanted his assistance. Kass attempted to contact Sabella by telephone, but to no avail.

■ The county court held a full evidentiary hearing on the voluntariness of the confession. These findings are presumed to be correct unless petitioner can establish one of the eight statutory exceptions in 28 U.S.C. § 2254(d), which limits the scope of review on habeas corpus of questions arising after a state court hearing. Sabella rests his claim that the standards of Escobedo, supra, were violated on § 2254(d) (8), which provides that the state court findings shall be presumed to be correct unless the record, considered as a whole, does not fairly support such factual determinations. He asserts that the trial court only found that he had not requested an attorney "during the evening" of January 16, and that we should remand for a further hearing. If Sabella had requested an attorney in the presence of the detectives, Escobedo, supra, would require that the detectives refrain from questioning him until his attorney had arrived. This is also the law of New York. People v. Gunner, 15 N.Y.2d 226, 257 N.Y.S.2d 924, 205 N.E.2d 852 (1965).

Contrary to Sabella's assertions, the county judge, Thomas M. Stark, made full and complete findings, covering over 15 pages in the record, to support the conclusions that Sabella's statements

were voluntarily made and that there had been no deprivation of the right to counsel. The court found:

"Thirteen. That while the defendant was in the company of Detectives Barcellona, Hirsch, Biscardi and Friend on January 16, 1964, between 3:15 p. m. and 4:30 p. m., when he was placed under arrest, neither they or any of them or any other police officer exercised any force or violence against the defendant. * * * That at no time during this period did the defendant request to contact an attorney. * * *

\* \* \* \* \* \*

"I find further from all of the foregoing that as to the defendant's oral incriminatory admissions made to Detectives Biscardi and Friend on the afternoon of January 16th, 1964, there was no deprivation of the defendant's right to the aid of counsel." Trial III, pp. 564–567.

While it is undoubtedly true that Sabella at some point told his wife to call his attorney, it is quite possible that the conversation occurred in the interim before the detectives arrived rather than in their presence. Although Sabella testified that the detectives had heard him make the request, Detective Barcellona testified that he did not hear any request for an attorney at any time during this period, and Detective Hirsch, the other officer who went to Sabella's home, was not questioned on the subject. Thus, as Judge Ryan below found, there is ample testimony to support the state court's conclusion, and Sabella has not sustained his burden of establishing "by convincing evidence that the factual determination by the State court was erroneous." 28 U.S.C. § 2254(d).[1]

Sabella's second claim is that his counsel at the trial did not have time to prepare his case effectively. His appointed counsel was denied several requested adjournments and allegedly was not given adequate opportunity to examine the record of the first trial. All of the facts on this claim were presented to the state court in a habeas corpus petition. Judge Ryan held that the state court findings and conclusions were amply supported by the record.

We agree with the district court. Appellant's counsel at the third trial, John Frank, Esq., of Suffolk County Legal Aid, was appointed to represent Sabella on January 25, 1966, and a *Huntley* hearing began on March 9, 1966. Frank was given a copy of the minutes of the second trial, which should have acquainted him with everything of importance at the first trial, especially since Sabella was represented by the same counsel in both previous trials. There is no showing of any important discrepancies in the testimony of material witnesses at the first and second trials, and no reason to believe that any prejudice to Sabella did in fact arise from Frank's inability to fully study the record of the first trial. Furthermore, the record does not support appellant's contention of inadequate opportunity to study the transcript of the first trial. This is not a case where the state has arbitrarily refused to supply defense counsel with the transcript of an earlier trial. See United States ex rel. Wilson v. McMann, 408 F.2d 896 (2d Cir. 1969). The transcripts of the first trial were available at normal business hours. Also Frank was not rushed into the trial with unreasonably little time to prepare Sabella's case. On the contrary, Frank had a full six weeks to prepare his case

---

1. Even if there was doubt as to the state court's determination, *Escobedo's* standards in any event do not apply, inasmuch as Sabella's trial on the robbery charges began on June 22, 1964, the same date as *Escobedo* was decided, and its standards apply only to defendants whose trial began after that date. See Johnson v. New Jersey, 384 U.S. 719, 732–733, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Even though there were retrials after the effective date of *Escobedo*, the date of the commencement of the first trial is the operative date. See Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969).

before the hearing and trial began on March 9, 1966.

The asserted instances of prejudice arising from counsel's inadequate preparation are without merit. Sabella first claims that Frank neglected an opportunity to damage Detective Friend's credibility, in that he failed to expose an inconsistency between Friend's testimony at the first and third trials. This overlooks the fact that the same inconsistency appeared in the minutes of the second trial.

Sabella's second claim of prejudice is that Frank failed to bring out on cross-examination the fact that Barcellona testified at the first trial that he had left the precinct at 6:00 P.M. of January 16, before Sabella had been placed under arrest, but at the third trial, he testified that he had heard Sabella confess at 4:30. Sabella's argument ignores the fact that at the first trial Barcellona also testified that he had not been with Sabella the entire time before 6 o'clock, and that Sabella could have been placed under arrest during the ten to fifteen minute periods that he was out of the room. The testimony at the third trial taken in its entirety is not inconsistent with that given at the first trial.

Sabella also argues that the failure of Frank to call Mrs. Sabella as a witness at the third trial is another indication of his lack of opportunity to prepare for trial. It is difficult to understand how the failure to call Mrs. Sabella is a result of the inadequate preparation of counsel rather than an example of trial strategy, and we find no merit to the contention.[2] The record, viewed as a whole, reveals that counsel engaged in vigorous cross-examination of witnesses and cogently presented the case to the court and the jury.

Sabella next claims that he was unconstitutionally denied the right of allocution at his sentencing. Judge Ryan found this allegation "not borne out by the reporter's transcript," and we agree. Moreover, it is settled that the "failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus." Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). While the Court in *Hill* left open cases where defendant was affirmatively denied an opportunity to speak, we hold that in this case, if there was a denial of Sabella's right of allocution, no claim for relief in habeas corpus arises. See United States ex rel. Sniffen v. Follette, 393 F.2d 726, 727 n. 1 (2d Cir. 1968).

Sabella's final claim is that the failure of the state to try him on a 1963 indictment for grand larceny and issuing a fraudulent check until January, 1966, denied him the right to a speedy trial. Sabella had been indicted in August, 1963 for using a fraudulent check to purchase a television and radio. In January, 1964, he was arrested for participation in the robbery, and indicted on that charge in February, 1964. His first trial began in June, 1964, ending in a mistrial because the jury was unable to reach agreement. Sabella was allowed to remain free on bail until his second trial, which began in November, 1964, resulted in a conviction. Bail was then revoked and Sabella was sent to state prison. Ten months later in September, 1965, Sabella made a formal motion to dismiss the check indictment, which was denied by the court. Trial on the check indictment began on January 3, 1966, and resulted in a conviction. Most of the delay in getting to trial on the check charges was a result of the pending robbery trials which took over a year to complete, dur-

---

2. See § 5.2(b), ABA, Standards Relating to the Defense Function, Tentative Draft, March 1970, which provides:
    "The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client."

ing all of which time Sabella was released on bail. Thereafter, over nine months passed before Sabella formally requested that the check and grand larceny indictment should be dismissed, and he went to trial on the check charge shortly after that motion was denied.

Sabella claims that the delay in bringing the case to trial weakened the memory of his wife and prevented him from showing that he had attempted to make restitution to the complaining witness. Sabella's wife testified at trial that she had spent $800 of her husband's money on herself rather than depositing it in his checking account and that she had never informed her husband of the fact. On cross-examination, she admitted that she had falsely told the police that there was enough money in the account to cover the check when she did not know this to be a fact. She also admitted that she had never told the police or anyone at the appliance store about spending appellant's money. She could offer no sales slips or other documentary proof to support her story that she had spent Sabella's money on herself. Nor is there any claim that such proof ever existed.

From the testimony of Mrs. Sabella there is no reason to believe that the lapse of time was harmful to Sabella's case. She was able to remember that she had not told anyone else at the time about spending the money, but was unable to remember any details which would have supported her testimony. Further, there was no indication that the lapse of time had prevented her from producing any documentary evidence of how she had actually spent the money.

Sabella's only other claim of prejudice is that he was unable to produce two witnesses who would have testified to his attempts to make restitution to the appliance store owner. While such facts would be relevant in mitigation of sentence, they do not constitute a defense to the charge. There is nothing in the record to indicate that the inability to produce such witnesses was a result of the delay in going to trial. Statements of counsel for Sabella indicate that one witness was in the area, at East Islip, and that the other witness had been subpoenaed but that counsel did not "know whether or not he's coming or not." We find that there has been no denial of his right to a speedy trial.

Affirmed.