**Herbert X. BLYDEN, Jack X. Collins, Herbert Scott X. Deane, Stanley X. King, Plaintiffs,**

v.

**Frank HOGAN, individually and as District Attorney of New York County, George McGrath, individually and as New York City Commissioner of Corrections, Milton Batterman, individually and as Warden of the Manhattan House of Detention for Men, Defendants.**

**No. 70 Civ. 4878.**

United States District Court, S. D. New York.

Nov. 30, 1970.

Paul G. Chevigny, New York Civil Liberties Union, New York City, for plaintiffs.

Frank S. Hogan, Dist. Atty. of New York County, New York City, for defendant Hogan; Herman Kaufman, New York City, of counsel.

J. Lee Rankin, Corporation Counsel, New York City, for defendants McGrath and Batterman; James Nespole, New York City, of counsel.

LASKER, District Judge.

As an aftermath of the recent riots by prisoners (involving the taking of hostages and destruction of property) at the Manhattan House of Detention and other New York City jails, investigations are being made to determine criminal responsibility. In the course of the investigation by the District Attorney of New York County, his office has requested prisoners, without the presence of their counsel and without prior advice of their right to counsel (the *Miranda* warnings) to sign a waiver in the following form:

DISTRICT ATTORNEY'S OFFICE

COUNTY OF NEW YORK

Date_____

I hereby consent to be taken to the District Attorney's Office, New York County, to be interviewed whenever the District Attorney may deem it necessary, with or without the presence of my attorney.

---

Plaintiffs are prisoners at the Manhattan House of Detention, and apparently were inmates at the time of the riots. They bring this civil rights class action under Title 42 U.S.C.A. §§ 1983, 1985, and their jurisdictional correlatives, 28 U.S.C.A. §§ 1343, 2201, for a declaratory judgment that the use of the above waiver is an infringement of their constitu-

tional rights and those of the class they claim to represent (all prisoners at the House of Detention). They move now for a preliminary injunction restraining the use of the waiver form. Although the request for relief is thus broadly stated, it appears from the papers and the statements of plaintiffs' counsel on argument that the more precise relief actually sought is that no prisoner should be asked to sign the waiver except in the presence and with the advice of counsel.

It is alleged that the form of waiver has been submitted to "some of the plaintiffs and to other prisoners" for signature, that the forms are signed in the Warden's office, that "it is expected that all plaintiffs, and others in plaintiffs' class, will be given such forms to sign," that plaintiffs and some or all members of plaintiffs' class are "necessarily" targets of the investigation, and that indictments have been presented against prisoners in other jails under defendant Mc-Grath's jurisdiction in Queens and Kings Counties for kidnapping and riot, respectively.

It is claimed that the course of action pursued deprives plaintiffs of their right to counsel under the Sixth Amendment, and of due process and equal protection under the Fourteenth Amendment, because, in contrast to the case of prisoners, persons not in jail whom the District Attorney seeks to question can freely seek counsel and are generally interviewed with counsel present, and that it constitutes a "pattern, practice and policy" of the defendants to deprive plaintiffs of these rights.

As the caption indicates, the action is brought against the District Attorney of New York County, the New York City Commissioner of Corrections, and the Warden of the Manhattan House of Detention for Men.

Defendants contend that the court lacks jurisdiction because the complaint alleges no justiciable controversy, that it states no federal claim "which necessitates this Court to exercise its jurisdiction," and that the proceeding cannot be denominated a class action under Rule 23, F.R.Civ.P.

Facts not in dispute establish that two of the plaintiffs, Deane and Collins, have been asked to sign the waiver. Deane did so; Collins refused and accordingly was not questioned. By order of Justice Postel of the New York Supreme Court (who had no knowledge of the circumstances under which the waiver was signed), Deane and two other inmates who had executed waivers were then taken to the District Attorney's office for questioning in connection with the investigation of the prison riots. At the District Attorney's office, but not before, these inmates were given Miranda warnings. Deane, when questioned, asked to consult his attorney and was sent back to Detention without further questioning. Neither plaintiffs Blyden nor King has been asked to sign a waiver or has been questioned, although Blyden claims that since he, Deane and Collins "have been incarcerated together and are all members of the inmate committee, I have reason to believe that I will be called if the other two named above are called."

## JUSTICIABILITY, EXERCISE OF JURISDICTION AND PROPRIETY OF CLASS ACTION

■ Defendants raise a congerie of related questions as to justiciability, the "necessity" for the court's exercising its jurisdiction, and the propriety here of a class action.

Relying on such cases as Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L. E.2d 989 (1961), and Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943), defendants claim that the issues sought to be raised in this proceeding are not justiciable within the meaning of Article III of the Constitution. But this reliance is misplaced. In *Poe*, plaintiffs, married women, sued to declare unconstitutional Connecticut laws which they alleged prevented them from securing medical advice as to contraception. Finding that the statute had not been enforced for generations, that no

prosecutions were threatened, indeed that there was a clear state policy against prosecution under the statute, and that therefore no imminent harm faced the plaintiffs, the Court declined to issue a declaration as to the statute and dismissed the appeal. As the opinion remarked:

> "This Court cannot be umpire to debates concerning harmless, empty shadows." Poe v. Ullman, *supra,* 367 U.S. at 508, 81 S.Ct. at 1758.

Here, however, the request to inmates to sign a waiver of right to counsel and to submit to interrogation by the District Attorney as to a crime certainly committed by one or more members of the proposed class is no "harmless, empty shadow." Furthermore, where "enforcement" is threatened, the *Poe* Court indicated that its holding did not apply:

> "It is clear that the mere existence of a state penal statute would constitute insufficient grounds to support a federal court's adjudication of its constitutionality in proceedings brought against the State's prosecuting officials *if real threat of enforcement is wanting.*" (Emphasis added.) *Poe, supra,* at 507, 81 S.Ct. at 1758.

As to *Tileston,* it need only be said that there the Court merely held that a doctor wishing to advise as to contraceptive measures (as distinct from patients seeking that advice) had no standing to attack the same Connecticut statute prohibiting use of contraceptive devices. Clearly, here, if the analogy applies at all, the inmates stand in the shoes of the patients rather than the doctor.

The analysis of *Poe* and *Tileston* applies also to the defendants' contention that the cases of Collins and Deane are moot because one refused to sign the proffered waiver and the other requested advice of counsel and was excused. In *Poe,* the Court analogizes the concepts of " 'standing,' 'ripeness,' and 'mootness' " and states that the determination as to whether a federal court should act to declare unconstitutional a state statute (here a practice) where such matters are asserted depends on whether the issue is raised "at the instance of one who is himself admittedly harmed, or immediately threatened with harm, by the challenged action." The plaintiffs here fall within the category defined, even though some of them have either declined to sign the waiver or been excused after doing so because, as the District Attorney's counsel made clear at the argument on the motion, the District Attorney, understandably, intends to continue the investigation in full force and has not represented that he will not again request plaintiffs, or any of them, to execute waivers without advice of counsel or prior Miranda warnings.

Furthermore, as to mootness, since the United States Supreme Court held in United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), that where "voluntary cessation of allegedly illegal conduct" exists it "does not deprive the tribunal of power to hear and determine the case, *i. e.,* does not make the case moot," surely the case is not moot where the conduct is actually illegal and the defendants have asserted an intention to continue it.

Related to the defendants' contention of lack of justiciability and mootness is the claim that the complaint "alleges no federal claim which necessitates this Court to exercise its jurisdiction to grant the equitable relief requested." Here the defendants appear to rely on such holdings as Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); a line of cases including Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and United States v. Cowan, 396 F.2d 83 (2d Cir. 1968); and finally, Stefanelli v. Minard, 342 U. S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951). But these decisions are clearly distinguishable from the facts of the instant case. In *Golden,* a distributor of handbills criticising a Congressman's voting record sought declaratory judgment (but no injunction) as to the constitutional-

ity of a New York statute which penalized the distribution of anonymously distributed literature in connection with an election campaign. During the pendency of the case the Congressman retired from the House of Representatives and was elected as a justice of the Supreme Court of New York. A three-judge court held that the plaintiff was nevertheless entitled to a declaratory judgment because a controversy existed at the commencement of the action. On appeal, the Supreme Court reversed and ordered the complaint dismissed, holding that the improbability of the former Congressman's again being a candidate for Congress was so great as to preclude a finding of a "controversy" within the meaning of the Constitution. In the instant case, however, as above observed, there is not only no improbability that the investigation will continue, but the defendants have clearly stated that it is going forward as before.

The *Wong Sun* line of cases is inapplicable since they deal with questions arising under the Fourth Amendment, not under the Sixth or the due process or equal protection clauses of the Fourteenth.

*Stefanelli* does not control here since in *Stefanelli* the relief sought and refused was an injunction against a state court criminal prosecution. There is no doubt that, as stated in Cleary v. Bolger, 371 U.S. 392 at 401, 83 S.Ct. 385 at 390, 9 L.Ed.2d 390 (1962) there is a "deep-seated federal policy against piecemeal review," as a result of which the federal courts are commanded by the Supreme Court not to bar state criminal prosecutions. However, in the case at hand we are not dealing with a state criminal prosecution, but rather with an investigation to determine whether crimes have been committed, and, if so, as to the persons who may have committed them. Nothing in *Stefanelli* or its progeny suggests that a federal court should refrain from exercising its power to enjoin a district attorney from depriving citi-

zens of the United States of their constitutional rights. To the contrary, the language of the Court of Appeals for this Circuit in Wright v. McMann, 387 F.2d 519 (1967), (a case dealing with the rights of prisoners who were, it is true, convicted, but the principles of which appear applicable here), instructs, as to abstention by a federal court, that

"* * * the latest pronouncement on the subject by the Supreme Court emphasizes that the doctrine is to be applied 'only in narrowly limited "special circumstances."' Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, [19 L.Ed.2d 444], * * *" (p. 524).

and further,

"[i]t is reasonable to conclude that cases involving vital questions of civil rights are the least likely candidates for abstention, e. g., McNeese v. Board of Education, supra, 373 U.S. 668 at 673–674, 83 S.Ct. 1433, [10 L.Ed.2d 622], * * *." (p. 525).

■ Before proceeding to the merits, there remains for determination the question of propriety of a class action.[1] Having found the case to involve a non-moot, justiciable controversy, the determination of this issue depends solely on whether the plaintiffs have met the criteria of Rule 23, F.R.Civ.P. I find that the criteria have been met: that the class is too numerous to render joinder practicable, that there are questions of fact and law common to the class (and that they predominate), that the plaintiffs' claims among them are typical of the class, that separate actions would create the risk of inconsistent adjudication, that the plaintiffs, represented by counsel experienced in this sector of the law, will fairly and adequately represent the class, and that a class action is the superior method for fair and efficient determination of the controversy.

## THE RIGHT TO COUNSEL

■ Relying on Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12

---

1. It is necessary to make a determination at this time, since the motion requests an injunction running in favor both of the plaintiffs and the members of the class.

**518**

L.Ed.2d 246 (1964), Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and such New York cases as People v. Gunner, 15 N.Y.2d 226, 257 N.Y.S.2d 924, 205 N.E.2d 852 (1965), and People v. Arthur, 22 N.Y.2d 325, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968), and the American Bar Association's Code of Professional Responsibility, Cannon 7, Disciplinary Rule 7–104(A) (1), plaintiffs claim that they have a constitutional right to advice of counsel at or before the time they are requested to sign the waiver. The cited decisions binding on this court are, of course, only those of the Supreme Court of the United States, and under them plaintiffs' contentions fail.

In *Massiah*, the Court held that where the police secretly and without the knowledge of the defendant, already under indictment, eavesdropped electronically on defendant's incriminating statements, the eavesdropping violated his Sixth Amendment right to counsel and the statements could not be used against him at trial. Here no prisoner is under indictment, and such statements as might be taken from him would be taken openly and, of course, with his knowledge.

*Escobedo* extended the *Massiah* principle to persons not yet under indictment who were targets of the investigation of a crime. But putting aside the fact that the plaintiffs here have not shown that they are targets (though it is reasonable to assume that some members of the proposed class certainly *will* be, and plaintiffs *may* become targets) the present case is clearly distinguished from the special facts of *Escobedo*. In *Escobedo*, the defendant had on several occasions asked to confer with his counsel, who was present, in another room, at the place of questioning, and the police deliberately misled the defendant into believing that his counsel was unwilling or unavailable to confer. Such circumstances do not exist here.

Finally, in *Miranda*, the Court of course required absolute rules of warn-

ing to a defendant and knowing, post warning waiver of rights by the defendant, as a prerequisite to use against him of any statement of his taken by public authority while he is held in custody. Assuming, as I believe to be the case, that plaintiffs here are "in custody" within the meaning of *Miranda* (see Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968)), nevertheless *Miranda* does not purport to prohibit questioning without counsel, but only to establish the *sine qua non* for its occurrence and for the use of statements taken in the absence of counsel.

More to the point in the present context are the decisions of the Court of Appeals for this Circuit in United States ex rel. Glinton v. Denno, 309 F.2d 543 (2d Cir. 1962), cert. den. 372 U.S. 938, 83 S.Ct. 886, 9 L.Ed.2d 769 (1963), and United States ex rel. Glinton v. Denno, 339 F.2d 872 (2d Cir. 1964), cert. den. 381 U.S. 929, 85 S.Ct. 1570, 14 L.Ed.2d 688 (1965), holding valid the admissibility at trial of statements given voluntarily by the defendant outside the presence of the attorney who had appeared in the case as his defense counsel. To be sure, *Miranda* now commands that without the prescribed warnings no statement may be held voluntary, or at least admissible, but it does not require the presence of counsel provided the warnings are timely given and right to counsel knowingly waived.

### THE RIGHT TO MIRANDA WARNINGS

Plaintiffs next contend that, regardless of right to counsel, the procedure attacked by the complaint is constitutionally defective because the *Miranda* warnings are not given until *after* the waiver is signed. Defendants answer that so long as the waiver is not acted on until the warnings are given, the procedure meets *Miranda's* requirements. I disagree with the defendants and find that *Miranda* effectively demands, in the circumstances of this case, that the specified warnings must be given to a plain-

tiff-prisoner before or at the time he is asked to sign the waiver.

I start from the premise, not disputed by defendants, that plaintiffs are "in custody' within the meaning of *Miranda*. Any doubt there may have been earlier on this proposition was laid to rest by the holding in Mathis v. United States, *supra*. There some of the evidence leading to conviction consisted of documents and oral statements obtained from the defendant by a government agent, without *Miranda* warnings and while petitioner was in prison convicted on a separate offense. The government contended, inter alia, that *Miranda* did not apply because the defendant had not been put in jail by the questioning officer, but was there on a separate charge. The Court disagreed and, finding that "there was always the possibility during [the] investigation that [the] work would end up in criminal prosecution" and that the defendant was in custody, held that *Miranda* applied. Mathis v. United States, *supra*, 391 U.S. at 4, 88 S.Ct. at 1505. As to custody, the Court observed:

"The Government also seeks to narrow the scope of the *Miranda* holding by making it applicable only to questioning one who is 'in custody' in connection with the very case under investigation. There is no substance to such a distinction, and in effect it goes against the whole purpose of the *Miranda* decision which was designed to give meaningful protection to Fifth Amendment rights. We find nothing in the *Miranda* opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody." Mathis v. United States, supra, at 4–5, 88 S.Ct. at 1505.

■ *Mathis* is conclusive authority, therefore, not only for the proposition that *Miranda* applies to one held in custody for a crime other than that being investigated, but also to one in custody where "there was always the possibility during [the] investigation that [the] work would end up in criminal prosecu-

tion." Since the plaintiffs here are clearly in custody within the rule of *Mathis* and there is "always the possibility" in the instant case that the investigation as to the plaintiffs (certainly those already presented with waivers, to say nothing of the class as a whole) will "end up in criminal prosecution," it is clear that the waiver presentation is governed by *Mathis-Miranda* rules.

■ Because the District Attorney does in fact administer *Miranda* warnings to inmates before actual interrogation, the sole question for determination is whether the failure to administer the warnings before or at the time of requesting the waiver is fatal. I believe that it is.

The determination of the issue is controlled by the thrust and language of *Miranda* itself. It is too clear to require extended comment that the intent of *Miranda* was to assure that public authorities take all steps necessary effectively to advise a person in custody of his right to counsel on interrogation. As the Court stated, 384 U.S. at 470, 86 S.Ct. at 1626:

"No effective waiver of the right to counsel during interrogation can be recognized unless specifically made *after* the warnings we here delineate have been given. The accused who does not know his rights and therefore does not make a request may be the person who most needs counsel." (Emphasis added.)

This passage is particularly applicable to the case at hand in two respects: First, it establishes that the time of warning is a key factor as to its effectiveness; second, that no assumption can be made that failure to request counsel (as would be the case for those who sign waivers without such a request) is knowing, since the person who "does not make a request may be the person who most needs counsel."

The two-stage procedure followed by the District Attorney is fatally defective because it may lull such an unknowing person into signing a waiver in the ab-

sence of knowledge of his right to refuse to do so. Once the waiver has been signed, the later *Miranda* warnings are not an adequate remedy in the case of an inmate under the psychologically coercive pressure of anxiety to please law enforcement officers. It must be remembered that almost all the inmates in the Houses of Detention are persons whose cases are unadjudicated, and it is at least a reasonable assumption that an inmate's hope for a favorable attitude towards his case on the part of the District Attorney's office will have a pronounced effect on his response to a request for waiver, even if he *is* timely warned of his rights, much less if he is not. His will may well be "overborne." Lynumn v. Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963). The test on this subject "has become increasingly meticulous through the years." Johnson v. New Jersey, 384 U.S. 719, 730, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882 (1966).

To return to a discussion of the District Attorney's two-stage procedure, the cases dealing with the validity of confessions procured in two stages are analogous. See, e. g., Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1967), Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954), and United States ex rel. Hughes v. McMann, 405 F.2d 773 (2d Cir. 1968). In those cases where an earlier confession was found to have been involuntary a subsequent confession was held inadmissible when influenced by the first. Here the taking of the waiver without prior warnings could well influence the later proceedings so that later warnings would be ineffective. Bearing in mind the psychological coercion inherent in the relationship of inmate (awaiting trial) to prosecutor and (in the case of prison rioters) to warden, it is fair to conclude that the average inmate would be under severe pressure not to revoke his waiver at the District Attorney's office after late advice of his right to counsel or to remain silent.

Accordingly, I find that the procedure complained of deprives the plaintiffs of due process of law under the Fourteenth Amendment because it omits *Miranda* warnings before the request for waiver is made, and the motion for a preliminary injunction is therefore granted to the extent of restraining the District Attorney from requesting waivers in the form set out above (or any similar form of waiver) except upon the condition that any inmate requested to execute such a waiver shall, immediately prior to such request, have been fully advised of his constitutional rights in accordance with the rule of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Pursuant to Rule 52(a), F.R.Civ.P., this opinion constitutes the court's findings of fact and conclusions of law.

Submit order.