THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL MILLER, Appellant.

Second Department, August 18, 1980

## APPEARANCES OF COUNSEL

*Peter Branti, Jr. (Alan Tabakman* of counsel; *Deborah Keyes* on the brief), for appellant.

*Kenneth Gribetz, District Attorney (Thomas C. Yatto* of counsel), for respondent.

## OPINION OF THE COURT

MANGANO, J.

We hold today that once a criminal proceeding has been commenced, a defendant, who has not made a valid waiver of his right to counsel, may not be subjected to custodial interrogation, in the absence of counsel, concerning crimes unrelated to the pending proceeding, even if an attorney has not as yet appeared for defendant in that proceeding. Under the same circumstances, we also hold that for the purpose of such an interrogation, defendant may not waive counsel in counsel's absence.

On August 24, 1978, sometime before 8:00 A.M., Ms. Ricki Perlowitz reported to the Spring Valley police that she had been raped earlier that morning. She informed the police that the rape had occurred in a 1978 Cadillac Eldorado and gave a partial identification of the license plate number. A check on that plate revealed that the car had been stolen.

At approximately 8:00 A.M., on the same date, Officer John Tallman of the Spring Valley Police Department located the stolen car in a parking lot in Spring Valley and observed the defendant sleeping inside the vehicle. He immediately arrested Miller, advised him of his *Miranda* rights and brought him to the Spring Valley police station.

While the defendant was held in custody pending his arraignment on a charge of criminal possession of stolen property in the first degree (Penal Law, § 165.50), Spring Valley police took a statement from Ms. Perlowitz at the police station concerning her alleged rape. Immediately thereafter, another statement was taken from Ms. Perlowitz by a Detec-

tive Robert Hewitt of the Clarkstown Police Department, after it was learned that the alleged rape may have occurred in the Town of Clarkstown.

The same morning, at approximately 11:00 A.M., at the Spring Valley police station, the defendant was arraigned by a Village Justice on a felony complaint charging criminal possession of stolen property in the first degree. Defendant was not represented by an attorney at this arraignment, even though he was advised by the Village Justice of his right to such representation. He apparently never waived that right.

Soon after being arraigned, the defendant was turned over to Detective Hewitt of the Clarkstown Police Department. The detective, after advising the defendant of his *Miranda* rights, began questioning him concerning several different criminal matters. Two hours later, Detective Hewitt was joined, at his own request, by Mr. Stephen Lowe, a Rockland County Assistant District Attorney. Mr. Lowe continued the interrogation of the defendant after again advising him of his *Miranda* rights. The defendant, who stated affirmatively that he understood these rights, did not request an attorney nor ask to remain silent.

During the course of this interrogation, the defendant was questioned with regard to the pending charge of criminal possession of stolen property, as well as the rape of Ms. Perlowitz. He was also questioned concerning another rape that he was suspected of having committed in 1977. The defendant admitted he committed all three crimes, and, later that evening, was arraigned on a felony complaint for the alleged rape of Ricki Perlowitz.[1]

Subsequently, a Grand Jury in Rockland County handed up an indictment accusing the defendant of the rape of Ms. Perlowitz (rape in the first degree, Penal Law, § 130.35, subd 1) and criminal possession of the stolen Eldorado Cadillac (criminal possession of stolen property in the first degree, Penal Law, § 165.50). In another count of this three-count indictment, the defendant was also accused of rape in the first degree (Penal Law, § 130.35, subd 1) in that: "Said defendant, in the Town of Clarkstown * * * on or about the 28th day of August, 1977, engaged in sexual intercourse with Jean McEnery, a female, by forcible compulsion, to wit, by threatening her with a knife."[2]

---

1. At this arraignment, the defendant was represented by the Public Defender.

2. On September 26, 1977, approximately one month after the rape alleged in this

The defendant moved to suppress those statements made to the police and the District Attorney on August 24, 1978, subsequent to his arraignment on the charge of criminal possession of stolen property. After the suppression hearing, nisi prius suppressed those statements relating to the charge of criminal possession of stolen property and those relating to the 1978 rape of Ricki Perlowitz. The statements concerning the 1977 rape of Ms. McEnery, however, were found admissible. The court based its decision on the following grounds: (1) that once arraigned on the criminal possession charge the defendant could not be interrogated concerning that charge in the absence of counsel; (2) that since the criminal possession and Perlowitz rape charges were so "interrelated and intertwined", postarraignment questions concerning the latter in the absence of counsel would be equally prohibited; and, (3) that since the arraignment on the criminal possession charge had not been a pretext for holding the defendant for questioning on the McEnery rape, and since the latter was not so "interrelated and intertwined" with the former, as the Perlowitz rape had been, questioning the defendant in the absence of counsel on the McEnery rape was authorized, as postarraignment interrogation concerning unrelated crimes.[3]

The issues raised by these facts are whether the commencement of a criminal proceeding will operate to prohibit custodial interrogation of a defendant, in the absence of counsel, concerning crimes unrelated to the action already commenced, even if an attorney has not appeared in that action, and whether, in the face of such an interrogation, a defendant can waive, in the absence of counsel, both the right to remain silent and the right to be assisted by an attorney. Recent decisions of the Court of Appeals, though not addressing these precise issues, have, in resolving related issues, settled questions of law elemental to a decision in this case. A review and synthesis of these recent opinions are necessary to demonstrate the firm precedential basis of our holding today.

count, the District Attorney of Rockland County sought an order in the Clarkstown Village Court directing the defendant to appear for a corporeal lineup in connection with the investigation of this alleged incident. The application was denied, as was a similar application in the Spring Valley Justice Court on Septembber 27, 1977. For the purpose of opposing each of these applications, the defendant was represented by the Rockland County Public Defender's office.

3. Nisi prius also found that since the applications of September 26 and 27, 1977, for orders directing defendant's appearance in a lineup had been denied, the right to counsel never indelibly attached in the McEnery rape case. It had been left in an investigatory and not a judicial state.

Our analysis must begin by stating a general principle that has been affirmed and reaffirmed by our highest court. "[F]irmly rooted in our State's constitutional and statutory guarantees of due process of law [are] the privilege against self incrimination and the right to the assistance of counsel (see *People v Rogers,* 48 NY2d 167; *People v Settles,* 46 NY2d 154; *People v Hobson,* 39 NY2d 479; *People v Arthur,* 22 NY2d 325; *People v Donovan,* 13 NY2d 148). This court [the Court of Appeals] has consistently exercised the highest degree of vigilance in safeguarding the right of an accused to have the assistance of an attorney at every stage of the legal proceedings against him (e.g., *People v Blake,* 35 NY2d 331; *People v Di Biasi,* 7 NY2d 544). Our special solicitude for this fundamental right is based upon our belief that the presence of an attorney is the most effective means we have of minimizing the disadvantage at which an accused is placed when he is directly confronted with the awesome law enforcement machinery possessed by the State" *(People v Cunningham,* 49 NY2d 203, 207).

Significantly, this guiding principle of law and policy has found expression in two distinct, but parallel, lines of cases *(People v Cunningham, supra,* p 208). In the first, the right to counsel depends solely upon whether formal adversary proceedings have been commenced *(People v Settles,* 46 NY2d 154, *supra; People v Di Biasi,* 7 NY2d 544, *supra; cf. People v Coleman,* 43 NY2d 222). In the second, the controlling factor is whether a defendant has already retained or been assigned counsel *(People v Rogers,* 48 NY2d 167, *supra; People v Hobson,* 39 NY2d 479, *supra; People v Arthur,* 22 NY2d 325, *supra; People v Donovan,* 13 NY2d 148, *supra).*[4]

In the first line of cases, *People v Settles (supra,* p 160) traces what it denominates "the right of a criminal defendant [in this State] to interpose an attorney between himself and the sometimes awesome power of the sovereign". *Settles* (46 NY2d 154, 164, *supra)* holds that "[o]nce a matter is the subject of a legal controversy any discussions relating thereto should be conducted by counsel: at that point the parties are in no position to safeguard their rights" (see, also, *People v Blake,* 35 NY2d 331; *People v Meyer,* 11 NY2d 162; *Peopel v Rodriguez,* 11 NY2d 279). A very recent case, *People v Samu-*

---

4. The right to counsel enunciated in these two lines of cases is, of course, in addition to the right to have the advice of counsel during the course of any custodial interrogation *(Miranda v Arizona,* 384 US 436).

*els* (49 NY2d 218, 221), accords with *Settles (supra),* but refines its holding to render it consistent with the present statutory law. "By statute a criminal action now commences with the filing of an accusatory instrument (CPL 1.20, subd 17), which includes a felony complaint (CPL 1.20, subds 1, 8). Thus in this case the defendant's right to counsel attached when the felony complaint was filed and the arrest warrant issued (cf. *People v Blake,* 35 NY2d 331, 339, *supra; People v Sugden,* 35 NY2d 453, 461, *supra).* This represents a departure from prior law which traditionally regarded arraignment on the warrant as the ' "first stage of the criminal proceeding" ' *(People v Stockford,* 24 NY2d 146, 149). We have previously indicated that this rule became obsolete when the CPL was adopted *(People v Blake, supra,* p 339)."

Therefore, upon the commencement of criminal proceedings, i.e., "after a suspect has been indicted *(People v Waterman,* 9 NY2d 561; see *People v Settles, supra; People v Hobson, supra)* or arraigned *(People v Meyer,* 11 NY2d 162; see, also, *People v Bodie,* 16 NY2d 275) or charged in a felony complaint *(People v Samuels,* 49 NY2d 218), he cannot make an effective waiver of his rights to remain silent and to have the assistance of counsel unless his attorney is present at the time of the waiver. This is so even in instances where the accused has neither retained nor requested an attorney (see *People v Settles, supra)." (People v Cunningham, supra,* p 208.)

In the second line of cases, referred to as the *Donovan-Arthur* line *(People v Cunningham,* 49 NY2d 203, 209, *supra),* the rule was early established that prohibited all police questioning of a defendant and all attempts to obtain his waiver of the right to counsel, in the absence of counsel, once an attorney had become involved in a pending action *(People v Arthur,* 22 NY2d 325, *supra; People v Friedlander,* 16 NY2d 248; *People v Gunner,* 15 NY2d 226; *People v Donovan,* 13 NY2d 148, *supra).* This was followed by a long, and, at times, confusing effort to clarify the scope of the *Donovan-Arthur* rule with regard to matters unrelated to an action in which a defendant already had legal representation (see *People v Rogers,* 48 NY2d 167, 171, *supra; People v Cunningham, supra,* p 209). An exception was carved out in *People v Taylor* (27 NY2d 327, 332) to the effect that the *Donovan-Arthur* rule did not obtain unless and until the police or prosecutor learned that an attorney had been secured "to assist the accused *in defending against the specific charges for which he*

*is held"* (emphasis in original) (see, also, *People v Hethering-ton,* 27 NY2d 242). The *Taylor* exception rearticulated in *People v Hobson* (39 NY2d 479, *supra)* was later refined and limited in a series of cases (see *People v Ermo,* 47 NY2d 863; *People v Carl,* 46 NY2d 806; *People v Ramos,* 40 NY2d 610; see, also, *People v Vella,* 21 NY2d 249; but cf. *People v Coleman,* 43 NY2d 222; *People v Clark,* 41 NY2d 612). Finally, in its landmark decision in *People v Rogers* (48 NY2d 167, *supra),* the Court of Appeals came to a definitive resolution of the apparently conflicting statements of the law contained within the *Donovan-Arthur* line of cases. It held that the *Taylor* exception *(supra)* was inconsistent with the fundamental principles enunciated by those cases (e.g., *People v Hobson, supra). Taylor (supra)* was thus overruled when the court in *Rogers (supra,* p 173) declared: "that once a defendant is represented by an attorney, the police may not elicit from him any statements, except those necessary for processing or his physical needs. Nor may they seek a waiver of this right, except in the presence of counsel."

In overruling the *Taylor* exception (27 NY2d 327, *supra),* however, the court did not specifically overrule the entire holding in that case. It seemingly left standing *Taylor's* restatement of the rule announced by *People v Stanley* (15 NY2d 30) that: "[T]hough incriminating statements elicited in the absence of counsel and after the commencement of criminal proceedings by arraignment or indictment are inadmissible at a subsequent trial on charges for which the accused has been indicted or arraigned (see, e.g., *People v. Di Biasi,* 7 N Y 2d 544; *People v. Waterman,* 9 N Y 2d 561), the People are still privileged to question the accused as to unrelated crimes in the absence of counsel. As the then Judge FULD observed *(Stanley, supra,* at pp. 32-33); 'However, as the language of the cases makes clear, the mere fact that the defendant has been arraigned or indicted on one charge does not prevent law-enforcement officials from interrogating him, in the absence of an attorney, about another and different crime—upon which he has been neither arraigned nor indicted—or render inadmissible a confession or other inculpatory statement obtained as a result of such questioning. (See *People v. Weinstein,* 11 N Y 2d 1098; *People v. Lathan,* 12 N Y 2d 822.) The reason is clear. With regard to the second crime about which the defendant is questioned, there has not yet been "the formal commencement of the criminal action" against him. *(People v.*

*Waterman,* 9 N Y 2d 561, 565, *supra;* see, also, Richardson, Evidence [9th ed., 1964], p. 547.)' " *(People v Taylor, supra,* pp 329-330.)* This holding, of course, does not fit within the *Donovan-Arthur* line of cases, but within that first line of cases that makes the right to counsel contingent solely upon the commencement of criminal proceedings.

If we were to conclude our analysis at this point, the two parallel lines of cases set out above would, by the very nature of their parallelism, remain separate and distinct. In this posture, they would be incapable of intersecting and would have to be recognized as developing independently. This disjunctive view of the cases, however, poses a dilemma in attempting fully to apply the law as announced. This dilemma is created by the apparent difference in the scope of each line of cases.

In the first, it has been held that the right to counsel indelibly attaches once a criminal action has been commenced *(People v Samuels,* 49 NY2d 218, *supra; People v Blake,* 35 NY2d 331, *supra),* and that questioning a defendant in the absence of counsel after the commencement of, and concerning matters *related* to, a pending criminal action is prohibited *(People v Samuels, supra; People v Settles,* 46 NY2d 154, *supra).* In the second, it has been held that once an attorney has become involved in a proceeding, all questioning about *related or unrelated* matters, in the absence of counsel, must cease *(People v Rogers,* 48 NY2d 167, *supra).*

It is perplexing, then, to realize that *People v Stanley* (15 NY2d 30, *supra),* which is in the first line of cases, has never been specifically overruled (see *People v Townes,* 41 NY2d 97, 103; *People v Ramos,* 40 NY2d 610, 616, *supra; People v Lopez,* 28 NY2d 23, 27; *People v Taylor,* 27 NY2d 327, 329, *supra; People v Simons,* 22 NY2d 533, 539; *People v Gunner,* 15 NY2d 226, 233, *supra).*[5] If *Stanely (supra)* should still constitute applicable law, then it would definitely limit the scope of the first line of cases by authorizing custodial interrogation of a defendant on matters *unrelated* to a pending criminal action. More significantly, however, *Stanley's* continued applicability would make it possible to circumvent the holding in *People v Rogers (supra),* which is a clear and

---

5. In *People v Ermo* (47 NY2d 863, 865, *supra)* the Court of Appeals specifically stated, in referring to the dissent by Judge GABRIELLI wherein *People v Stanley* (15 NY2d 30, *supra)* is cited, "We do not in any way depart from our holdings in the cases cited by the dissenter".

unambiguous statement by the Court of Appeals extending the scope of the second line of cases to include a prohibition against questioning on *unrelated* matters.

Under *Rogers (supra),* if a defendant's right to counsel were effectuated immediately upon its attachment at the commencement of a criminal proceeding, the police could not question him further concerning *related or unrelated* matters without an attorney being present. *Stanley (supra)* would avoid this, however, in those cases where, for some reason, a defendant's opportunity to exercise his right to counsel is delayed. There, the mere commencement of the action, without an attorney appearing to represent the defendant, would only prevent *related* questioning. Thus, by delaying one right, the protection of another can be completely negated.

This result, however, is only an apparent one. Upon closer scrutiny, it becomes evident that the two lines of cases analyzed today are not perfectly parallel, but converge at a certain point. It is in this convergence that *Stanley (supra)* is overruled and its consequences avoided.

In *People v Settles* (46 NY2d 154, 159, *supra),* the Court of Appeals held: "The filing of an indictment constitutes the commencement of a formal judicial action against the defendant and *is equated with the entry of an attorney into the proceeding.* This being the case, a defendant in a postindictment, prearraignment custodial setting, *even though not then represented by an attorney,* may not in the absence of counsel waive his right to have counsel appear at a corporeal identification. Hence, any actions taken by the police with respect to an indicted but unarraigned defendant which impinge upon his right to counsel may not be used against him at trial." (Emphasis added.)[6] Consequently, the filing of an accusatory instrument not only triggers the right to counsel, but is also equated with the entry of counsel into the proceeding, even if an attorney has not actually appeared. Therefore, since *Rogers* (48 NY2d 167, *supra)* prohibits police questioning, in the absence of counsel, on *related or unrelated matters* once an attorney has become involved in a pending action, and since the commencement of an action is equivalent to an attorney becoming so involved, then all police questioning, in the absence of counsel, concerning matters *related or unrelated* to

---

**6.** As already noted, *People v Samuels* (49 NY2d 218, *supra)* has refined this holding to render it consistent with CPL 1.20 (subds 1, 8, 17). By statute, a criminal action commences with the filing of an accusatory instrument, including a felony complaint.

the pending action is unauthorized. Likewise, *Rogers'* prohibition against the police obtaining a waiver of a defendant's rights to remain silent and to be assisted by counsel would apply to the same extent *(People v Rogers,* 48 NY2d 167, 173, *supra).* Thus, the parallels converge and *Stanley* (15 NY2d 30, *supra)* is overruled.

In the case at bar, the defendant was not represented by an attorney at the arraignment on the felony complaint charging criminal possession of stolen property (i.e., the first arraignment on August 24, 1978). However, there is no proof in the record, nor was there a finding, that he had waived his right to counsel at that arraignment.[7] The police questioning that followed, which was conducted in the absence of counsel,[8] was therefore improper. Consequently, all inculpatory statements made by defendant, and not only those relating to the stolen property charge, and the rape of Ricki Perlowitz, should have been suppressed by nisi prius.

Our holding today requires us to reverse the order of nisi prius insofar as it failed to suppress those statements made by the defendant relating to the 1977 rape of Ms. McEnery. We are, therefore, constrained to vacate both guilty pleas, each to one count of rape in the first degree to cover the entire three count indictment. Since we have found that nisi prius erred in not suppressing the statements relating to the second count of the indictment (i.e., the McEnery rape), that plea must necessarily be vacated. On the first count (i.e., the Perlowitz rape), however, a plea was taken after statements relating thereto were properly suppressed. Thus, there exists no reason, per se to vacate this plea. And yet, both pleas were taken with the understanding that the defendant would receive a sentence of 4 to 12 years on each count of rape, with one sentence to run concurrently with the other. Therefore, "the plea[s] covered both * * * and [were] expressly conditioned on the negotiated agreement that the defendant would receive concurrent sentences on the separate counts to which he pleaded. Thus in order to give effect to the plea commitment in this case, the plea[s] should be vacated in [their] entirety" *(People v Clark,* 45 NY2d 432, 440).

7. We do not decide today whether such a waiver would in any way change the holding announced herein.

8. Whether this questioning was conducted subject to a waiver, as contended by the People, is irrelevant. Even if there was a waiver, it was taken in the absence of counsel and is thus invalid.

We have examined such of defendant's remaining contentions as are preserved and have found them to be academic or without merit.

Accordingly, the judgment must be reversed, on the law, the motion to suppress granted in its entirety, the pleas vacated, and case remanded to the County Court for further proceedings consistent herewith.

MOLLEN, P. J., HOPKINS and TITONE, JJ., concur.

Judgment of the County Court, Rockland County, rendered March 8, 1979, reversed, on the law, suppression motion granted in its entirety, guilty pleas vacated and case remanded to the County Court for further proceedings consistent herewith.