*692 OPINION OF THE COURT
Chief Judge Wachtler.
In each of these unrelated cases, the defendant came under suspicion for murder and other offenses while being prosecuted for less serious, unconnected crimes. Each defendant was represented by counsel in the pending prosecutions. The investigating authorities, knowing that they could not subject the suspects to custodial interrogation in the absence of counsel while the prior charges remained pending (see, People v Rogers, 48 NY2d 167; see also, People v Bertolo, 65 NY2d 111, 116), did not arrest or question the defendants until after disposition of the prior charges. Then, after the required preinterrogation warnings, but in the absence of counsel, each defendant made inculpatory statements.
The common question presented by these appeals is whether those inculpatory statements should be suppressed on the ground that they were obtained in violation of the defendants’ right to counsel. We hold that the right to counsel derived from their representation on the prior charges expired with the disposition of those charges and, accordingly, that the defendants’ suppression motions were properly denied.*
I.

People v Robles

Defendant Robles was convicted, upon a guilty plea, of second degree murder and several counts of first and third degree robbery. The murder charge and one of the robbery charges arose out of the stabbing death of a woman in a stairwell of the Waldorf-Astoria Hotel on September 22, 1982. In the victim’s handbag the police found a card bearing a bloody fingerprint. For the next two months, the investigation was fruitless, but on November 23, the fingerprint was matched to defendant. A check of police records and further investigation revealed that Robles had a pending indictment in New York County, that he was represented by counsel on that charge, that he was then free on bail and was scheduled to appear in court on November 29.
*693 On the scheduled date, the investigators attended court in order to establish surveillance of defendant, but he did not appear. They learned, however, that his case had been adjourned until December 6 and they observed him as he attended court on that and two consecutive dates. At the third appearance, defendant entered a guilty plea in satisfaction of the pending charges and the case was adjourned until January 11, 1983 for sentencing.
Although defendant remained free on bail, the investigators made no attempt to arrest him on the homicide matter. The detectives acknowledged at the suppression hearing, and the suppression court found, that the decision not to arrest defendant was prompted in part by the investigators’ knowledge that they could not question defendant in a custodial setting in the absence of counsel because he was represented by an attorney on the pending charges.
On January 4, the investigators learned of another robbery at the Waldorf-Astoria Hotel committed the day before by a man fitting defendant’s description. The detectives soon connected defendant with at least 10 robberies of a similar nature and defendant’s photo was selected from an array by a number of the victims. The detectives immediately sought to arrest defendant, but they could not locate him until he appeared for his sentencing on January 11. Because he was remanded into custody at that time, however, they decided not to arrest him in connection with the murder and robberies until he completed his sentence on the prior charges.
When defendant was released from Hikers Island three months later, he was immediately arrested, given Miranda warnings and questioned, without counsel present, about the murder and robberies. Defendant made oral, written and videotaped confessions. His subsequent motion to suppress the statements was denied, he entered a guilty plea, and his conviction was affirmed by a unanimous Appellate Division. A Judge of this court granted defendant’s application for leave to appeal.

People v Murray

Defendant Murray was convicted after a jury trial of second degree murder and first degree robbery. He had participated in the robbery of a man in the victim’s Greenwich Village apartment, during which, according to the prosecution theory, defendant’s accomplice stabbed the victim to death. The vie *694 tim was discovered on June 2, 1983, a day or two after his death.
Detectives first connected defendant to the crime several weeks later through information provided by an acquaintance of defendant, Frank Bruno, who was in custody at Hikers Island in connection with unrelated charges. During a July 9 interview, Bruno told the detectives that Murray had told him of his participation in a robbery in the Greenwich Village vicinity that had "gone sour”. Murray had told Bruno that the victim had tried to flee, Murray’s accomplice had grabbed the victim, and the two had fled the apartment with "blood in the hallway and blood all over the place”.
The investigators obtained a set of Murray’s fingerprints from police in New Jersey, where defendant lived, but due to the poor quality of the prints were unable to determine if they matched an unidentified print found in the victim’s apartment. Several months went by, apparently with few further developments.
On October 26, 1983, defendant was arrested in Manhattan for shoplifting. He was arraigned the following day and a Legal Aid attorney was assigned to represent him. The detectives conducting the homicide investigation learned of this arrest and monitored the progress of the case. Defendant did not appear at the first scheduled date in the shoplifting proceeding but later surrendered on a bench warrant and the case was adjourned to December 6. On December 5, Assistant District Attorney (ADA) Kitsis, who was assigned to the shoplifting case, had a discussion with the ADA in charge of the homicide investigation. Kitsis learned that the police wished to speak to Murray about the homicide and that they could not do so while the shoplifting charge remained pending, although it is not clear from the record that Kitsis knew that Murray was a suspect in the case. In any event, the following day Kitsis successfully moved to dismiss the shoplifting charge, citing "a broad range of factors”.
As the defendant left the courtroom, the homicide detectives approached and asked to talk to him at the station house. He complied and when they arrived at the station, defendant was taken to an interview room, read Miranda warnings and questioned. He quickly confessed to his participation in the robbery and was placed under arrest for murder.
Although the suppression court found that the dismissal of the shoplifting charge was for the purpose of permitting the *695 police to question defendant about the homicide without an attorney present, defendant’s suppression motion was denied. A divided Appellate Division affirmed and one of the dissenting Justices granted defendant permission to appeal to this court.
II.
Defendants contend and the People concede that during the pendency of the prior charges on which defendants were represented by counsel, and of which the investigating authorities were aware, defendants could not have been questioned while in custody, in the absence of counsel, about any of the charges (see, People v Rogers, supra). Defendants further claim that this right was somehow violated because the police attempted to avoid the Rogers proscription by awaiting or prompting the disposition of the pending charges before interrogating them.
To the extent that defendants’ argument assumes that the Rogers right to counsel survived the disposition of the pending charges, it is foreclosed by People v Mann (60 NY2d 792), where we held that uncounseled interrogation on new charges was permissible after the dismissal of prior charges for which the defendant was represented. Similarly, in People v Colwell (65 NY2d 883), we held that, once the pending charge had resulted in a conviction and the defendant was represented only for purposes of an appeal, Rogers did not preclude questioning on unrelated charges.
Defendants claim, however, that these cases must be treated differently than Mann and Colwell because here the police and prosecutors made a conscious decision to refrain from questioning defendants during the period of Rogers protection. This deliberate attempt to "circumvent” Rogers, according to defendants, violated their right to counsel. We disagree.
The right to counsel during pretrial interrogation, one aspect of our State’s constitutional right to counsel (NY Const, art I, § 6), is governed by a core principle: once the right has attached, "the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel” (People v Arthur, 22 NY2d 325, 329; see also, People v Hobson, 39 NY2d 479; People v Donovan, 13 NY2d 148). Many of our decisions in this area have been devoted to determining when this "indelible” right to counsel attaches and have *696 generally been grouped into two distinct lines (see, People v Cunningham, 49 NY2d 203, 208-209).
The first, beginning with People v Di Biasi (7 NY2d 544), holds that questioning the accused in the absence of counsel is precluded, without regard to whether counsel has been retained or assigned, upon the commencement of formal adversary proceedings, either by indictment (People v Settles, 46 NY2d 154; People v Waterman, 9 NY2d 561), arraignment (People v Meyer, 11 NY2d 162) or the filing of a felony complaint (People v Samuels, 49 NY2d 218). The second line of cases extends the right to the earlier, investigatory stage, if the suspect has invoked the right to counsel, either because an attorney has entered the proceeding (People v Hobson, 39 NY2d 479, supra) or because the suspect unequivocally states a desire to consult with an attorney before speaking to the police (People v Cunningham, 49 NY2d 203, supra).
From its inception, however, the rule prohibiting uncounseled interrogation was subject to one well-recognized exception relevant here — the attachment of the right to counsel on one charge, whether by actual representation or by the formal commencement of adversary proceedings, did not preclude questioning of the suspect with respect to unrelated charges (see, People v Taylor, 27 NY2d 327; People v Hetherington, 27 NY2d 242; People v Stanley, 15 NY2d 30). In those cases, the attachment of the right to counsel was considered case-specific, without any effect on other charges.
Thus, we held in People v Taylor (supra) that the entry of an attorney in one proceeding did not cause the right to counsel to attach to unrelated charges, stating: "[T]he thrust of our prior decisions is that once the police learn that an attorney has entered the proceeding, it is offensive to our system of justice, in the absence of a waiver, to permit further questioning by representatives of the People. Implicit in this rationale is the concept that the rule does not obtain unless and until the police or prosecutor learn that an attorney has been secured to assist the accused in defending against the specific charges for which he is held” (id., at 332 [emphasis in original]).
The Taylor exception, however, proved difficult to apply and was soon riddled with its own exceptions. Thus, we suppressed the fruits of uncounseled interrogation on unrelated charges where, for example, the otherwise permissible questioning was tainted by "exploitation” because the police also questioned *697 the defendant about a charge on which he was represented by counsel (People v Ermo, 47 NY2d 863). And in People v Carl (46 NY2d 806, 808), we held that, although the crimes were different, uncounseled interrogation on the second was precluded because it was "sufficiently related” to the charge for which the defendant had been assigned counsel (see also, People v Ramos, 40 NY2d 610 [questioning prohibited where it was unclear whether attorney on pending charge had undertaken to represent defendant on second, unrelated crime]; People v Vella, 21 NY2d 249 [questioning impermissible where crimes, though separate, arose from same transaction and counsel had been assigned on the pending charge]; see generally, People v Whitaker, 75 AD2d 111, 116-117 [Titone, J.]).
Finally, in People v Rogers (48 NY2d 167, supra), we embraced a bright-line rule precluding custodial questioning on any matter in the absence of counsel once a defendant is represented by an attorney, because we recognized "the obvious difficulty encountered in drawing the subtle distinctions necessitated by the interaction of the Hobson and Taylor rules” (id., at 171).
It is important to note, in determining whether the Rogers rule was violated in the cases now before us, that our primary concern in Rogers was that questioning on unrelated charges might interfere with the attorney-client relationship that existed with respect to the pending charges. We noted, for example, that the common thread running through the cases in which we had found the Taylor exception inapplicable (e.g., People v Ermo, supra; People v Carl, supra; People v Ramos, supra) was that in each case the defendant had been represented by an attorney at the time of the questioning (People v Rogers, supra, at 172-173). Most significantly, we stated that the rule was required, in part, because "it is the role of defendant’s attorney, not the State, to determine whether a particular matter will or will not touch upon the extant charge” (id., at 173).
The Rogers decision did not signal a wholesale rejection of the fundamental premise underlying the Taylor exception— that the attachment of the right to counsel on one charge does not create an independent right to counsel with respect to other charges. Rogers created a bright-line rule, not because the Taylor premise was fundamentally flawed, but because it was difficult to apply in cases where questioning on unrelated charges might compromise the right to counsel on the pending *698 charges. Thus the right to counsel recognized in Rogers is not independent, but is instead derived from the existing attorney-client relationship, and is accordingly limited in scope.
For example, in People v Kazmarick (52 NY2d 322), we held that Rogers did not preclude questioning on unrelated charges where the defendant’s right to counsel had attached in a pending case by virtue of the commencement of formal adversary proceedings, but he was not, in fact, represented by counsel on the pending charge. This holding implicitly recognized both the continuing validity of the Taylor premise and the fact that Rogers was concerned with protection of an existing attorney-client relationship with respect to pending charges.
Our decision in People v Colwell (65 NY2d 883, 885, supra) also demonstrates that the Rogers rule is limited in scope to situations in which questioning on unrelated charges could interfere with the right to counsel on pending charges. In holding that Rogers did not apply after the pending charge had resulted in a conviction, we noted that "[a] primary concern underlying Rogers was that a defendant could incriminate himself on the pending charge, on which he is represented, even though the questions ostensibly concern unrelated charges.”
It is clear from these decisions and from the background in which it was decided that Rogers established a derivative and accordingly limited right with respect to unrelated charges in order to protect the direct and full-fledged right to counsel in the pending proceeding. In light of this rationale, a decision by investigators to refrain from questioning a suspect until he or she is no longer represented by counsel on unrelated charges protects the interests with which we were concerned in Rogers as fully as a decision to question the suspect in the presence of counsel while the prior charges are pending.
In addition, we consider that the rule advocated by the defendants would present difficulties in application at least equal to those that prompted us to adopt the bright-line rule of Rogers. It would require police officers, before questioning a suspect, to ascertain whether at any point during the investigation the suspect was represented by counsel on unrelated charges and, if so, whether someone involved in the investigation made a conscious decision to refrain from questioning the suspect at such time in order to "circumvent” the defendant’s right to counsel. Such a requirement would seriously impede *699 investigations and would only benefit those with the longest arrest records.
Similar difficult questions of motive and timing would be presented to suppression courts. In resolving these questions, the courts would find themselves second-guessing, and inevitably interfering with, the prosecutorial prerogative to dismiss a case or delay an arrest. The rules we have adopted and applied here, which focus on the suspect’s status at the time of the interrogation, not only fully protect the interests with which we were concerned in Rogers, but also avoid these problems by providing an objective measure to guide law enforcement officials and the courts.
We note, however, that we are not confronted with the situation hypothesized in People v Osgood (52 NY2d 37, 45, n 2) and alluded to in People v Mann (60 NY2d 792, 794, supra). In Osgood, we held that, for purposes of CPL 30.30, an indictment did not commence a new criminal proceeding, separate from the proceeding earlier commenced by a felony complaint, when the felony complaint had been dismissed for failure to prosecute. We noted that a contrary holding would arguably allow prosecutors to "disattach” the right to counsel under People v Samuels (49 NY2d 218, supra) by temporarily dismissing the charges, only to be reinstated after an uncounseled interrogation (People v Osgood, supra, at 45, n 2). That footnote was later cited in People v Mann (supra, at 794), where we noted that no evidence of such prosecutorial "manipulation” was apparent.
Defendant Murray contends that the dismissal of the shoplifting charges against him was the result of the kind of manipulation we warned about in Osgood but found lacking in Mann. The situation here, however, differs in at least two significant respects from the scenario posited in Osgood. First, in the case before us, the interrogation related to a matter concerning which the right to counsel had never independently attached. Second, there is no indication that the shoplifting charges against Murray were, or could have been, resurrected. Thus, the dismissal of the charges was not the kind of ploy to effect a temporary suspension of the right to counsel which we sought to prevent by our ruling in Osgood. We need not and do not decide what effect such a temporary abandonment of a prosecution would have either on the right to counsel with respect to the dismissed charges or on the derivative right to counsel concerning unrelated matters.
*700 For these reasons, we conclude that the procedures employed by the investigators in these cases did not violate the defendants’ right to counsel and that the suppression motions were properly denied.
Accordingly, in each case the order of the Appellate Division should be affirmed.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
In each case: Order affirmed.

 Defendant Murray raises two other points, one concerning the voluntariness of his waiver of rights preceding his confession and the other concerning an alleged error in the trial court’s charge to the jury. To the extent that these arguments are preserved for review, we find them to be without merit.