Kaye, J.
(concurring as to result in Bing and Medina, and dissenting as to Cawley). Over the past several decades, this court applying the New York State Constitution evolved a body of law that "constitute^] the strongest protection of right to counsel anywhere in the country.” (Galie, The Other Supreme Courts: Judicial Activism Among State Supreme Courts, 33 Syracuse L Rev 731, 764 [1982]; see also, Galie, State Constitutional Guarantees and the Protection of Defendants’ Rights: The Case of New York, 1960-1978, 28 Buffalo L Rev 157, 178-186 [1979].) Our law in this area was neither the full-blown creation of a contemporary court nor a reaction to perceived Supreme Court retrenchments (see, Bonventre, State Constitutionalism in New York: A Non-Reactive Tradition, 2 Emerging Issues in St Const L 31, 45-49 [1989]). Rather, it was a product of the careful, considered implementation of three guarantees of our State Constitution — due process, the privilege against self-incrimination, and the right to assistance of counsel — which proceeded despite individual changes in the composition of the court.
That jurisprudence had at its core the perception that in criminal cases — wholly unlike civil cases — "the presence of an attorney is the most effective means we have of minimizing the disadvantage at which an accused is placed when * * * directly confronted with the awesome law enforcement machinery possessed by the State.” (People v Cunningham, 49 NY2d 203, 207.) We time and again restated that principle as well as our view that the right to counsel is a jealously guarded, cherished principle, so fundamental that the highest degree of vigilance would be exercised in its defense (see, e.g., People v Cunningham, id.; People v Hawkins, 55 NY2d 474, 483-484; People v Rogers, 48 NY2d 167, 170; People v Settles, 46 NY2d 154, 160; People v Blake, 35 NY2d 331, 335-336).
Today, however, the court breaks with its proud tradition, *352 overruling People v Bartolomeo (53 NY2d 225) and equating legal representation in civil and criminal cases. Because we believe that Bartolomeo, properly understood and applied, protects defendants’ constitutional interests as we have to date understood them, and because we believe the extraordinary step of overruling that case is not compelled in the cases before us and ill advised, we dissent as to that core holding.
I.
The court’s opinion portrays Bartolomeo as an aberrant decision not worthy of precedential respect, a decision without a principled basis or even a rationale until it was invested with one seven years later. We profoundly disagree.
Bartolomeo did not appear out of the blue. It was an integral part of one line of our right-to-counsel cases — beginning with People v Donovan (13 NY2d 148), People v Arthur (22 NY2d 325) and People v Hobson (39 NY2d 479) — that secured the integrity of statements elicited during custodial interrogation, by providing that defendants could waive their right to counsel only in the presence of counsel. The principle was established, and fortified, by a succession of full, reasoned opinions of the court weighing the interests of both defendants and law enforcement.
As the court consistently made clear, that line of cases is premised on a concept of fundamental fairness, particularly the view that in custodial settings an attorney’s presence is the most effective means of minimizing the inherent imbalance and disadvantage faced by an accused subject to the coercive power of the State (see, e.g., People v Skinner, 52 NY2d 24, 29-30; People v Cunningham, 49 NY2d, at 207-209; People v Hobson, 39 NY2d, at 484-485; People v Donovan, 13 NY2d, at 151-152). Without "the advice of an attorney, the average person, unschooled in legal intricacies, might very well unwittingly surrender * * * right[s] when confronted with the coercive power of the State and its agents” (People v Settles, 46 NY2d, at 161), and there is significant risk of inaccurate, false and incomplete descriptions of the events described (People v Hobson, 39 NY2d, at 485). By requiring the presence of an attorney, the court ensured that the "waiver of a constitutional right [is] competent, intelligent and voluntary.” (Id., at 484.) .
The requirement of counsel for a waiver of a defendant’s right to counsel was not, however, absolute. Law enforcement *353 authorities were permitted to question even counseled defendants on "unrelated” charges without a lawyer — much as is allowed in civil cases. In People v Taylor (27 NY2d 327), for example, the court held that where defendants represented on robbery charges were interrogated about a murder, their statements would not be suppressed because the representation related only to the robbery, not murder.
The "unrelated” charge exception, as rapidly became obvious, left significant room for subversion of the right-to-counsel rules (see, People v Marshall, 98 AD2d 452, 458-459; People v Whitaker, 75 AD2d 111, 115-117; Lewin, Criminal Law and Procedure, 1981 Survey of New York Law, 32 Syracuse L Rev 223, 257-258 [1981]; Note, The Expanding Right to Counsel in New York, 10 Fordham Urban U 351, 359-360 [1982]). Although the majority opinion states that the "courts are fully capable of protecting the defendants’ rights on both the prior pending charges and the new charges” (majority opn, at 349), our experience proved otherwise. As we only recently wrote: "The Taylor exception * * * proved difficult to apply and was soon riddled with its own exceptions.” (People v Robles, 72 NY2d 689, 696.)
The point was exemplified by several cases (see, e.g., People v Ermo, 47 NY2d 863; People v Carl, 46 NY2d 806; People v Ramos, 40 NY2d 610) indicating that, in order for the counsel rules to be "accorded the highest degree of respect by those representing the State,” the "unrelated” charge exception had to be modified. (People v Rogers, 48 NY2d 167, 170, supra; see, People v Hauswirth, 60 NY2d 904, affg for reasons stated at 89 AD2d 357; People v Margolies, 125 Misc 2d 1033, 1044.)
People v Rogers occasioned that necessary change in the law. In Rogers, defendant’s attorney instructed the police to cease questioning defendant (a youth of limited education who was a robbery suspect), and the police complied — as to the robbery charges. But they simply shifted the subject and continued interrogating defendant, alone and manacled, for several hours, until he made a statement. Invoking Taylor, the People defended their right to do exactly that. But this court determined to call a halt to the facile evasion of defendants’ constitutional rights, and declared "once a defendant is represented by an attorney, the police may not elicit from him any statements, except those necessary for processing or his physical needs. Nor may they seek a waiver of this right, except in the presence of counsel.” (48 NY2d, at 173.)
*354 Those conclusions rested on two key observations about the attorney-client relationship. First, as the court noted, even as to charges unrelated to the subject of an existing representation, the attorney naturally would not abandon the client. And second, it "is the role of defendant’s attorney, not the State, to determine whether a particular matter will or will not touch upon the extant charge.” (Id.) Rogers established that the "relatedness” of pending charges, henceforth, would be determined not by law enforcement authorities, or even by courts, but by the attorneys who were actually representing the defendants.
People v Bartolomeo was an outgrowth and application of those principles. As in Rogers, the court confronted what was perceived as a means of circumventing defendant’s constitutional rights through questioning on "unrelated” matters. Bartolomeo himself, then 19 years old, had been arrested by Suffolk County police on burglary and arson charges, arraigned (with counsel) and released, and then nine days later again arrested by Suffolk County police for homicide. Although well aware of the arson/burglary investigation, the police interrogated defendant and secured inculpatory statements from him, until his lawyer on the other charges called and stopped the questioning.
On defendant’s appeal from his conviction, the main thrust of the People’s argument in this court was not that counsel in Rogers had been retained on the charge for which defendant was then in custody, while the counseled matter in Bartolomeo was an "unrelated” prior charge. In other cases, the Appellate Divisions had already applied the Rogers rule in both contexts (see, e.g., People v Outlaw, 81 AD2d 796; People v Pitt, 80 AD2d 864; People v Butler, 80 AD2d 644; People v Catalano, 80 AD2d 587; People v Miller, 76 AD2d 576, affd 54 NY2d 616). That application followed logically from Rogers’ two key assumptions: the attorney on the pending charges (arson/burglary) would not have abandoned his client on new charges (murder), and it was for defense counsel, not the State, to determine whether or not the two matters were in fact "unrelated.” Indeed, this court in People v Albro (52 NY2d 619, 624) — even before Bartolomeo — took note of the Appellate Division ruling that Rogers "precludes custodial questioning of a defendant in the absence of an attorney where the defendant is actually represented on unrelated charges.”
*355 What was more novel about Bartolomeo — and the principal point of the People’s argument — was that Rogers should be distinguished on the ground that the police had actual knowledge of the existence of the unrelated charges, but did not have actual knowledge of defendant’s representation on those charges. We rejected that argument because of the factual circumstances presented. Defendant’s arrest only nine days earlier by members of the same police department gave rise to a duty to inquire as to the presence of counsel, and the police would be charged with the knowledge that inquiry would have revealed (see also, People v Smith, 54 NY2d 954, 956 [police charged with duty to inquire where they in fact "assumed that defendant had an attorney” on earlier charges]).
That obligation is not imposed, however, where police could not reasonably be charged with knowledge that defendant had a lawyer on the unrelated matter (see, e.g., People v Lucarano, 61 NY2d 138 [no obligation where defendant denied representation]; People v Johnson, 61 NY2d 932 [no evidence indicating that police had knowledge of the prior criminal proceeding]; People v Fuschino, 59 NY2d 91 [same]; People v Servidlo, 54 NY2d 951 [police not charged with duty to investigate when unaware that defendant had minor unrelated charges pending against him]; People v Kazmarick, 52 NY2d 322 [defendant was not represented by counsel on unrelated charge]). Subsequent cases have made crystal-clear just how narrow the Bartolomeo rule is: as in Rogers, where law enforcement officers necessarily know that a defendant in custody is represented by counsel on pending New York criminal charges, it is impermissible to question the individual in the absence of counsel (see, e.g., People v Robles, 72 NY2d 689, supra; People v Colwell, 65 NY2d 883; People v Lucarano, 61 NY2d 138, supra), the assumption being that the lawyer once engaged will not abandon the client and can best determine what is indeed "unrelated” to the subject of the representation.
Thus, there is in fact no mystery about the so-called rRogers-Bartolomeo” rule, and no question as to its rationale or its fit in our jurisprudence. The suggestions in the majority opinion that Bartolomeo was an aberrant decision without rationale or principle to support it are simply without basis.
II.
The court concludes that it now must overrule Bartolomeo because it is unworkable, and because the three appeals before *356 us cannot be sensibly resolved without undercutting any basis or rationale Bartolomeo may have. Not so.
People v Bing and People v Medina
By any reasonable application of the law by those seeking to implement rather than overrule Bartolomeo, both Bing and Medina fall outside its reach.
Bing is a case that is factually far afield from Bartolomeo. In Bing, a Nassau County detective investigating a robbery learned from a known informant that defendant had recently come from Ohio, where he was "hot.” The detective confirmed by teletype that there was an outstanding "burglary warrant” in Ohio but made no inquiry as to defendant’s representation on the charge before picking him up; defendant almost immediately said he was willing to talk without a lawyer and confessed to the robbery. Both the trial court and the Appellate Division had no difficulty denying suppression of defendant’s statements, concluding that this case was significantly different from Bartolomeo and should be resolved in accordance with precedent and common sense by not extending Bartolomeo (see, 146 AD2d 178; 131 Misc 2d 62; see also, Survey of New York Practice, Developments in the Law, 64 St John’s L Rev 197 [1989] [discussing Bing]; Abramovsky, The Rogers-Bartolomeo Rule, NYU, May 1, 1989, at 3, col 3 [same]).
The majority opinion itself posits the absurdity of extending Bartolomeo to these facts: "Not only may communications between law enforcement agencies be difficult but substantive and procedural law may vary from State to State and present special difficulties for the New York police. Moreover, if an Ohio charge may serve as a predicate for a derivative right to counsel, so may a pending charge in Timbuktu, thereby compounding the problem.” (Majority opn, at 347.)
Nothing in the law forces the dismal choice on us of either carrying one of our holdings to its most ludicrous outer limits or scrapping it.
To the contrary, when the facts of new cases are significantly different from prior precedents, requiring an extension of the law, courts traditionally refine their holdings by balancing the competing considerations and deciding whether to enlarge the precedent or not. There is simply no reason to ignore that time-honored process in this case. While it is invariably possible to question why lines are drawn at one *357 place and not another — why include Buffalo and not Bangkok? —in this case there are perfectly good reasons for refusing to extend Bartolomeo beyond New York State borders.
As is immediately apparent, the addition of another State to the mix of facts adds a new ingredient with both practical and policy implications. Where the prior matter is proceeding in New York State, such key questions as whether, and when, there is actually a "pending charge” for right-to-counsel purposes can be readily answered; as the majority opinion points out, the legal effect of an arrest warrant, even a "burglary warrant,” in another State may vary from State to State and be harder to determine. Then too, there may be difficulty when the presence of an attorney from another State, conceivably even another Nation, is required in order to effect any waiver of defendant’s right to counsel in the New York matter —if that is what defendant wishes to do. In this same vein, both the trial court and the Appellate Division voiced concern about a rule that would draw nonadmitted attorneys into practice in New York State.
To be weighed against the potential new difficulties presented are the objectives and policy interests at stake. Turning first to the interest protected — "the attorney-client relationship that existed with respect to the pending charges,” or the "full-fledged right to counsel in the pending proceeding” (People v Robles, 72 NY2d, at 697, 698) — that interest is obviously different when the earlier charges are pending in another State. That State may or may not place the same value as New York on defendant’s right to counsel; most do not. Even if defendant’s statements are not suppressed in New York, other States that do share our concern for the right to counsel still can safeguard the right by suppressing, in their own proceedings, any pertinent uncounseled statements that defendant may have made in New York. That may not be as good a solution as we are able to effectuate within our own State, but the circumstances are different. There is not the same benefit to be had in suppressing statements and overturning convictions in New York prosecutions in the interest of protecting attorney-client relationships in other States.
The Bartolomeo rule additionally serves the New York State interest of preserving the attorney-client relationship by deterring uncounseled interrogation on unrelated charges. A bright-line rule leaves for the attorney — rather than the police —the determination whether a particular matter will or will *358 not touch upon the extant charge (People v Rogers, 48 NY2d, at 173; People v Robles, 72 NY2d, at 697). But when the prior matter is pending in another State, New York authorities generally should not have the same incentive for interrogation on that matter. By the same token, the geographical difference creates a natural separation that makes inadvertent questioning on the out-of-State charge less likely. Thus, the questionable benefit to be gained from extending the Bartolomeo rule beyond State borders would not justify the New York price it would command, and we would not do so.
We therefore cannot agree with the majority that Bing, sensibly decided, strikes at the substance of Bartolomeo, or undermines the rule, or in any way demonstrates the rule is unworkable. As the two courts prior to ours recognized, Bartolomeo as presently formulated is inapplicable to Bing, and it should not be extended globally.
Medina is the only case of the three in which the District Attorney demands Bartolomeo be overruled. Yet, as even the majority opinion recognizes, this case is resolved simply on the basis of undisturbed factual findings (majority opn, at 346). There is surely no need to overturn an important precedent because of Medina.
Medina is a straightforward application of the rule that a confession elicited from a suspect represented by counsel on unrelated charges will not be excluded if the police reasonably believe those charges are no longer pending, and they do not act in bad faith (People v Bertolo, 65 NY2d 111, 120-121). Reasonableness and bad faith — we have said on countless occasions — are usually mixed questions of law and fact (see, e.g., People v Harrison, 57 NY2d 470, 477; People v McRay, 51 NY2d 594, 601). In Medina, there are undisturbed findings, supported by the record, that the State Police acted reasonably and not in bad faith. Ordinarily, the court would simply have held the suppression issue was beyond the review powers of this court.
Medina, on any other day, would simply have been affirmed in a brief memorandum. Surely, Medina offers no reason to overrule Bartolomeo.

People v Cawley

Nor does Cawley. But Cawley presents a problem of a different order. Defendant there was represented by counsel on robbery charges, but absconded and remained a fugitive for *359 close to six months, until he was returned to the State on a bench warrant. The People, as appellant, ask us to consider whether an outstanding bench warrant should be treated as a pending unrelated charge within the meaning of Rogers; they portray this as an unresolved question of law, which the court avoids by overruling Bartolomeo. Were that question answered in the affirmative, we would agree that any inquiry into the substantiality of defendant’s relationship with his lawyer would be inappropriate, and suppression would be required — a regrettable result on these facts.
What the court neglects to mention, however, is that the regrettable result in Cawley is not attributable to any defect in the Bartolomeo rule. It is instead attributable to the zeal of the police in singlemindedly pursuing the interrogation of defendant without counsel until he confessed, although they were specifically told not to continue the inquiry or they would imperil a homicide investigation. As recited by the Trial Judge in his decision, the police were so advised by the A.D.A.; they then consulted her supervisor and bureau chief, who confirmed that advice; again dissatisfied, they sought counsel from the head of the trial bureau, who repeated the admonition. In the words of the Trial Judge: "For a lieutenant in charge of the Manhattan South Homicide Task Force to behave as this lieutenant behaved, it seems to me should be brought to the attention of his superior officers. Some action should be taken so that homicide matters in the future will not be compromised in the way that this one has become as a result of his failure to perform responsibly.” We therefore cannot agree with the court that Cawley demonstrates the unworkability of Bartolomeo. None of our rules work when they are deliberately ignored.
Thus, these three cases, sensibly decided, threaten neither the integrity of Bartolomeo nor our right to counsel rules generally; they do not show that Bartolomeo is unworkable; and they are not cause for the extraordinary action of overruling that recent precedent.
III.
In the end, our difference boils down to the majority’s insistence that Bartolomeo cannot be justified as a matter of policy, that the rule is unreasonable, and that it imposes an unacceptable burden on law enforcement agencies.
Those might well have been compelling considerations in *360 deciding Bartolomeo — indeed, those very arguments were made in the dissenting opinions in both Rogers and Bartolomeo. Even the criticism of this line of right-to-counsel cases by other jurisdictions and commentators was known at the time of Bartolomeo. The court held, however, that the Bartolomeo rule was justified as a matter of policy, that it was reasonable, and that it did not impose an unacceptable burden on law enforcement agencies. That there are now four votes for those same rejected policy considerations is, of course, not a valid reason to overrule the case (see, Wachtler, Stare Decisis and a Changing New York Court of Appeals, 59 St John’s L Rev 445 [1985]). "The ultimate principle is that a court is an institution and not merely a collection of individuals; just as a higher court commands superiority over a lower not because it is wiser or better but because it is institutionally higher. This is what is meant, in part, as the rule of law and not of men.” (People v Hobson, 39 NY2d, at 491.)
Nor does the recurrence of "Bartolomeo issues” over the past nine years signal the need for its reexamination or demise. We have had far greater difficulty with other recurring issues that remain part of our law. To some extent, moreover, the constant testing and retesting of recent precedents is a natural and welcome part of the judicial process. As appellants press for further applications and enlargements of newly articulated principles and respondents oppose them, our rules are tailored, refined and fitted into the law.
In this instance, in particular, the Rogers-Bartolomeo "sequels” have been helpful in molding the principles to effect their substance while avoiding absurd applications. In setting rules in this area, the court has always been mindful of the cost to law enforcement and, from People v Servidio (54 NY2d 951, supra) through People v Robles (72 NY2d 689, supra), the cases have enabled us to confine the Rogers-Bartolomeo principle beyond a shadow of a doubt to its essence and intended purposes — i.e., to instances where the police are necessarily aware that a defendant under custodial interrogation without a lawyer is represented by counsel on the existing or other pending charges. Until today, we have seen no "destabilization” in this body of law; during the nine-year life of Bartolomeo we have not been pressed to overrule the holding; nor have we encountered expressions of frustration or exasperation with an unworkable rule in the innumerable trial and intermediate appellate court decisions we have seen since Bartolomeo. Indeed, in the three cases before us, in every *361 instance the rule has been correctly applied by both the trial courts and the Appellate Divisions.
What does without question destabilize the law is the overruling of a significant recent precedent, by now fully a part of the law (see, e.g., People v Johnson, 89 AD2d 812, 813 [describing the Bartolomeo rule as "well settled”]; Richardson, Evidence § 545, at 253-257 [1985 Supp]; Jakala & Phalen, Crim Proc NY Pt 1 § 34.10, 33-36 [3d ed]). The Rogers-Bartolomeo rule is applied daily in courts throughout the State and familiar to law enforcement authorities, who presumably conduct their custodial examinations of defendants with due respect for the rights defined by those cases. Apart from the direct impact of overruling Bartolomeo, there is additionally a natural fear for its immediate family, most particularly Rogers. The court recognizes this, and hastens to offer explicit reassurance that today’s decision signals no retreat from Rogers (majority opn, at 350). That is no idle gesture, for the principle at stake is widely known as "the Rogers-Bartolomeo rule.” We call it that ourselves (see, e.g., People v Bertolo, 65 NY2d, at 116, 117).
Without in any way entering the current raging debate on the subject of stare decisis in constitutional decisionmaking (see, e.g., Monaghan, Stare Decisis and Constitutional Adjudication, 88 Colum L Rev 723 [1988]; Note, Constitutional Stare Decisis, 103 Harv L Rev 1344 [1990]), it is safe to say that this court in the past had placed a high value on adherence to the doctrine of stare decisis. Not often in our history have we explicitly overruled a recent precedent, and rarely if ever have we done so by a closely divided court. Perhaps even more disturbing than the extraordinary step of overturning Bartolomeo — wrong and unnecessary as it is to do so — is that it cannot help but unsettle the belief "that bedrock principles are founded in the law rather than in the proclivities of individuals.” (Vasquez v Hillery, 474 US 254, 265.)
We would affirm the Appellate Division orders in all three cases.
In People v Bing and People v Medina: Order affirmed.
Chief Judge Wachtler and Judges Hancock, Jr., and Bellacosa concur with Judge Simons; Judge Kaye concurs in result in a separate opinion in which Judges Alexander and Titone concur.
In People v Cawley: Order reversed, etc.
Chief Judge Wachtler and Judges Hancock, Jr., and Bell-
*362 acosa concur with Judge Simons; Judge Kaye dissents and votes to affirm in a separate opinion in which Judges Alexander and Titone concur.