Simons, J.
(dissenting). It would seem self-evident that unless defendant was represented by an attorney at the time, the police could not have been guilty of interfering with an attorney-client relationship by questioning him. The majority holds, however, that an attorney-client relationship, once established, is indelible and will be presumed to continue indefinitely. Unless the police prove that they knew the relationship had ended, any interrogation by them "unduly derogates the cherished right to counsel” (majority opn, at 380).
But a right must exist before it can be protected, cherished or, for that matter, derogated. Thus, in my view, our inquiry should start with a determination of whether the defendant had any rights at the time of the interrogation, not on what police thought at the time of questioning. If he was represented at the time, the tapes should be suppressed; if he was not, then his motion should be denied. Asking him to establish at the suppression hearing that he had counsel when questioned places little burden on him and is consistent with our precedents. Inasmuch as defendant has not even claimed that he was represented at the time of the interrogation, much less proved it, I would affirm.
I
Defendant was charged with murder after the execution style shooting of Sylvester Coleman, a stranger to him, outside a New York City apartment building. He shot Coleman in the head in a fit of anger because Coleman had parked on the *382 street in a place defendant had "reserved” for his own use to sell drugs. Shortly after the murder, the police apprehended defendant and placed him in a lineup. The record indicates that he was represented by counsel at the lineup and that counsel told the police, at that time, not to question his client.[1] Neither defendant nor his codefendants were identified, however, and the investigation languished.
More than three years later the police obtained the cooperation of Michael Davenport, a participant in the crime, and used him to question defendant and tape the inculpatory statements now challenged. Defendant was not charged with the crime and was not in custody at the time the tapes were made.
Whether these statements should be suppressed depends on whether the defendant was represented by an attorney when he made them. Because that factual issue was not resolved at the suppression hearing, the question becomes one of who had the burden of proof: defendant, to show he was represented at the time, or the People, to show that he was not.
II
A
First, under our cases defendant’s right to suppression depends on whether he was represented by counsel at the time he was questioned by police.
It is now well established that when a right to counsel has attached, it may not be waived by a defendant in the absence of counsel (see, People v Robles, 72 NY2d 689, 695; People v Arthur, 22 NY2d 325, 329). The decisions fall generally into two distinct categories. The first, originating with People v Di Biasi (7 NY2d 544), precludes questioning of the accused— without regard to whether counsel has been retained or assigned — upon the commencement of formal adversary proceedings (People v Robles, supra, at 696; People v Samuels, 49 NY2d 218; People v Settles, 46 NY2d 154). The second, derived from People v Hobson (39 NY2d 479), precludes questioning where the suspect in an investigation, prior to formal proceedings, has invoked the right to counsel by retaining counsel (see also, People v Robles, supra; People v Bartolomeo, 53 NY2d *383 225; People v Rogers, 48 NY2d 167). Related to the Hobson line are those cases growing out of People v Cunningham (49 NY2d 203) in which the uncharged suspect has requested counsel. We recognized a defendant’s right to counsel in those circumstances because the protection afforded to the attorney-client relationship would be hollow if police could prevent an individual from establishing such a relationship.
The Hobson line of cases rests on a different premise than the Di Biasi line. The Di Biasi rule protects the abstract right to counsel. Whether an attorney has been retained or not, we have recognized the need to protect those accused of a crime from the "coercive power of the State” and have barred uncounseled questioning unless the right has been waived with counsel present (People v Settles, supra, at 164). In the Hobson line of cases, however, it is not the abstract right to counsel that is protected — that arises only when formal adversary proceedings have commenced — but the actual attorney-client relationship (People v Hobson, supra, at 484). In Hobson cases, it is the client’s "right to the continued advice of a lawyer, already retained or assigned” that requires the law’s protection and forecloses uncounseled interrogation (id., at 485 [emphasis added]). Were the rationale for Hobson simply the need to combat the coercive power of the State, there would be no need to tie the attachment of the right to the entry of counsel into the matter, for the problem of undue coercion during a police investigation surely exists — indeed, more profoundly exists — for the defendant who has never spoken to an attorney.
We first made the distinction between the abstract right to counsel, which is crucial to a Di Biasi case, and an existing attorney-client relationship, which is the critical element in a Hobson case, in People v Kazmarick (52 NY2d 322, 328). We stated there that "[T]he right to counsel and representation by counsel are not the same thing * * * Simply put, the legal fiction of representation indulged by the [Di Biasi] line of cases is not tantamount to the actual or requested representation protected by the [Hobson] line.” Any doubts about the requirement of ongoing representation in cases like the present one were put to rest in People v Robles, where we said that the Hobson line of cases is "concerned with protection of an existing attorney-client relationship” (supra, at 698 [emphasis added]).
We have accepted that principle both in the old Bartolomeo *384 cases (see, People v Bartolomeo, 53 NY2d 225, supra, overruled People v Bing, 76 NY2d 331), where the right to counsel was derived from an unrelated pending charge, and in cases where the representation was invoked specifically for the crime under investigation (see, People v Ramos, 40 NY2d 610, 618 ["Since we find that the defendant was represented by counsel at the time of * * * interrogation, it follows that the prosecution’s interrogation * * * was impermissible”] [emphasis added]). In short, the right to counsel in a Di Biasi case exists, absent a counseled waiver, so long as there are adversarial proceedings against the defendant; the right to counsel in a Hobson case, such as the one before us, exists only so long as there is an attorney-client relationship (People v Rosa, 65 NY2d 380; People v Singer, 44 NY2d 241, 251; and see, People v Mann, 60 NY2d 792, 794; People v Hoff, 110 AD2d 782, 783, lv denied 65 NY2d 981; People v Rapinett, 113 AD2d 959; People v Abdullah, 108 AD2d 817, cert denied 474 US 919). The two concepts should not be "simplistic[ly] lump[ed]” together (People v Kazmarick, supra, at 327). If no attorney-client relationship exists, there is no need to condition police questioning on a counseled waiver.
The majority, contending otherwise, finds that right to counsel remains regardless of whether representation continues, because the right is "indelible”. But the right to counsel is said to be indelible, once it attaches, only insofar as it cannot be waived except in counsel’s presence. That definition of "indelible” was first stated in People v Settles (46 NY2d 154, 165, supra [which involved defendant’s waiver of counsel at a postindictment lineup]) and has been accepted universally in our decisions until today. The term has never before been construed to mean that the right cannot be terminated, either by the end of proceedings in a Di Biasi case or by the withdrawal or termination of the attorney in a Hobson case. Moreover, the concept of indelibility has no relevance here because this is not a waiver case. The issue is not whether defendant can make an uncounseled waiver but whether a right to counsel exists. The majority now holds, however, that indelible attachment means that a suspect cannot be questioned without counsel even if the right to counsel had terminated at the time of questioning (majority opn, at 374). It does not cite any authority to support that definition and the result cannot be squared with People v Robles (supra [indelible right terminates on dismissal of charge]), People v Davis (75 NY2d 517 [indelible right terminates when defendant does not hire *385 counsel]), People v Rosa (supra [indelible right terminates on attorney’s withdrawal]), People v Singer (supra [dispositive issue is whether representation continued at questioning]), and doubtless many other cases.
B
In addition to requiring a continuing attorney-client relationship, our cases also place the burden of proving continued representation on the defendant when suppression is sought.
Working from the rationale of Kazmarick, we made explicit in People v Rosa (65 NY2d 380, 387, supra) that in Hobson cases "it is the defendant’s burden to show that he was, in fact, represented by counsel * * * at the time of interrogation” (see also, People v Kinchen, 60 NY2d 772, 774; People v De Mauro, 48 NY2d 892, 893; People v Rapinett, 113 AD2d 959, supra; People v Jones, 114 AD2d 974).
Because the majority does not read People v Rosa to hold that the indelible right to counsel ends when the lawyer withdraws, it is helpful to recount at some length the facts and the holding of the Court in that case. In Rosa defendant was convicted of murdering a Manhattan grocer, and the question was whether his inculpatory statements to the Manhattan police had to be suppressed. He claimed they did because he was represented by counsel at the time. He based his claim on an attorney-client relationship established on an unrelated Brooklyn charge. The Appellate Division granted the motion to suppress, assuming that because adversarial proceedings had commenced in Brooklyn the right to counsel had attached there and defendant’s derivative right to counsel attached in the Manhattan investigation also (80 AD2d 527). Shortly thereafter we decided People v Kazmarick (supra), which discredited the Appellate Division’s rationale, and accordingly the People moved for reargument. They correctly contended that under Kazmarick there could be no right to counsel in Manhattan based solely on a Di Biasi claim arising from the Brooklyn proceedings. The Appellate Division granted reargument and remanded the matter for a hearing to determine if defendant was actually represented in Brooklyn at the time he was questioned in Manhattan (81 AD2d 766).
The hearing record established that, to the knowledge of the Manhattan police, a Legal Aid attorney had appeared for defendant at arraignment and the preliminary hearing on the *386 Brooklyn charges on January 20; that at the conclusion of the Brooklyn proceedings defendant’s attorney requested the court to appoint another lawyer for defendant because of a conflict of interest; and that the court granted the request. It was never established at the hearing whether the Legal Aid lawyer believed that he was immediately relieved when the court granted the motion or whether he believed he represented defendant until the new lawyer filed a notice of appearance.[2] The Manhattan detective did not ask, nor was he advised, whether defendant was represented when he questioned him on January 26.
On this evidence, the Appellate Division accepted the very argument defendant makes here: that inasmuch as defendant was once represented, the representation continued unless the People proved it had terminated (see, People v Rosa, 99 AD2d 963, 964, and concurring opn of Lynch, J., at 965). We reversed, finding the Appellate Division had erred in two respects. First, we held the court had improperly placed the burden of disproving representation on the People, rather than requiring the defendant to prove representation, and, second, that the court had improperly assumed that because defendant had once been represented, representation continued at the time of the Manhattan questioning (People v Rosa, 65 NY2d, at 384, supra).
Thus, contrary to the majority’s statement (majority opn, at 379), the critical issue in Rosa was not whether defendant’s right to counsel had attached before he was questioned. Manifestly it had. Counsel appeared for him at arraignment and during a preliminary hearing and then asked to be relieved because of a conflict. During the time defendant was represented, his right to counsel had indelibly attached on both matters and the critical issue was whether the representation had terminated. If it continued, the police would have been chargeable with knowledge of the representation and the motion to suppress should have been granted.
We held, in the language quoted above, that the burden of proving the existence of an attorney-client relationship rested on defendant, and since he had failed to establish that he was represented at the time the Manhattan police questioned him, *387 his motion to suppress should have been denied. The Kinchen, De Mauro and Jones decisions, cited above, support the legal proposition that the burden rests on defendant to establish that a right to counsel existed at the time of the interrogation. They were decided on a failure of proof basis. Obviously, if the burden of proving nonexistence of an attorney-client relationship were on the People, suppression would have been granted.
In Rosa we explained why the burden should rest on defendant in such cases. Representation in criminal matters is rarely a subject of written retainer. Frequently, the relationship is established orally and its continuation is a matter that exists only in the subjective understanding of the attorney and the client. That being so, the defendant, as we noted in Rosa, is in the best position to know whether he is represented at the time of interrogation. Moreover, to shift the burden to the People — as the majority does here — would be to ask them to prove a negative, a requirement the law finds " 'generally unfair’ ” (People v Rosa, supra, at 386). It is also worth noting that in many cases, particularly those involving a lengthy passage of time, it may be difficult or impossible for the police to inquire of the defendant or to search out counsel without jeopardizing their investigation and it may be difficult or impossible for them to obtain a clear answer if they do. Indeed, if the police had inquired of counsel here, he might not have chosen to answer their questions or been able to do so unequivocally because he had represented both defendant and the police informant in the past.
Rosa differs factually from the case before us because Rosa based his unsuccessful claim of a right to counsel on representation in an unrelated pending charge. But the decision closely tracks this case otherwise: Police were aware that at some previous point the right to counsel had attached, but were unsure whether an attorney-client relationship existed at the time of questioning. They did not inquire as to the status of the legal representation but instead proceeded to question the defendant. Both cases involved a Hobson right to counsel, rather than the abstract Di Biasi right to counsel, and thus the right could have been terminated by withdrawal of the attorney or other acts unknown to the police.
If defendant carries his burden at the suppression hearing and shows that he was represented at the time of the questioning, suppression should be granted (People v Rosa, supra, *388 at 385; People v Kazmarick, 52 NY2d 322, 329, supra; and see, People v Bertolo, 65 NY2d 111, 117; People v Lucarano, 61 NY2d 138, 146; People v Fuschino, 59 NY2d 91, 98). But if defendant is unable to prove representation at the time of questioning, no right existed, no violation resulted from the police questioning and suppression should be denied.
Ill
It remains to apply the Rosa principles to the facts of this case.
The record before us shows only that counsel appeared for defendant at the lineup and instructed the police at that time not to question his client. Even now, on the appeal to this Court, defendant has not claimed more. Indeed, counsel asserts that whether defendant was represented at the time he was questioned is irrelevant, that because he had an attorney three years earlier, the police could not question him thereafter without a counseled waiver of his rights regardless whether the relationship continued or not. But that is not what our precedents hold. The attorney-client relationship must exist at the time of questioning and under Rosa and the cases cited above the burden of proving that it continued rested on defendant. Because he failed to sustain that burden in this case, his motion for suppression was properly denied by the hearing court.
It is no answer to suggest, as the majority does, that the police should investigate whether the attorney-client relationship has continued before interrogating a defendant (majority opn, at 376, 379). The question here is what should happen if they do not. Rosa and Bertolo stated a sound, practical answer appropriately tailored to protect a suspect’s right to counsel: If an attorney-client relationship existed at the time of questioning, suppression should be granted. The burden for establishing those facts, as Rosa expressly held, is on the defendant. The majority’s holding, however, departs from those cases and establishes a standard of strict liability: Suppression is automatic if the duty to inquire is ignored, regardless of what an inquiry would discover. I can think of no justification for such a rule. Indeed, the majority’s holding shifts the focus and effect of our right-to-counsel rules from protection of a right to punishment of perceived wrongdoing by police.
*389 IV
Some final observations about the majority opinion are appropriate.
First, the majority relies extensively on People v Knapp (57 NY2d 161, cert denied 462 US 1106) and People v Skinner (52 NY2d 24), but neither of those cases address the issues presented on this appeal. There was no question in either case that the defendant was represented and no need to decide who had the burden of proving representation.
Next, to support its contention that the People had the burden to prove the nonexistence of an attorney-client relationship in Hobson cases, the majority relies on People v Davis (75 NY2d 517, supra). Davis is inapposite because, concededly, the defendant never retained an attorney and the sole burden issue was whether her waiver was voluntary.[3] Rosa, of course, specifically distinguished between the People’s burden on voluntariness and the defendant’s burden on representation, the issue to be decided here (65 NY2d 380, 386, supra).
The majority also relies on People v Marrero (51 NY2d 56) to support its expanded concept of the indelible right to counsel, holding in effect that even though representation may have terminated, the right remains indelible once invoked, and also to support its position that the People had the burden of proving an attorney-client relationship no longer existed. I do not read our decision there to support either point.
In Marrero, the defendant retained a lawyer to arrange his surrender to police. The lawyer agreed to represent him for only that limited purpose. He called the police to his office, surrendered the defendant to them and the police took defendant to the station for questioning without his lawyer. We acknowledged in our decision that the representation had, in all likelihood, terminated before the police questioned defendant, but we nonetheless held that his right to counsel had attached and was violated by the questioning. But we did not arrive at that conclusion by relying on the interpretation of *390 Hobson adopted by the majority. Though the defendant in Marrero contended that the court must presume that an existing attorney-client relationship existed when he was questioned, the same extension of Hobson defendant urges here, we decided the case instead on the basis of People v Cunningham (49 NY2d 203, supra), that the right to counsel exists for those who are without counsel but who have made an unequivocal request to have a lawyer present. Applying that rule in Marrero we construed defendant’s decision to meet police at an attorney’s office as the equivalent of a verbal request for counsel (People v Marrero, supra, at 59).
But more to the point, in Marrero the Court refused to decide whether representation had ceased or not, implicitly recognizing that fact could be critical in Hobson cases, and it did not decide who had the burden to establish the existence of an attorney-client relationship.
I also disagree with the majority on more fundamental grounds. Its decision overlooks the distinction between the abstract right to counsel in a Di Biasi case and the right to counsel arising from actual representation under Hobson. This lumping together of the two concepts may require suppression in future cases when no right of the suspect has been violated. It would not matter, for instance, that the attorney had died, been disbarred, chosen to withdraw, or terminated the relationship because of a conflict of interest. Under the majority’s rule the relationship, once established, would be presumed to continue indefinitely. The majority claims this is not so (majority opn, at 380), but it fails to state clearly how this presumption would be overcome. It first states that if "the police, at the time they arranged for secret tape-recordings, had any reason to believe that a known attorney-client relationship in the matter had ceased,” the questioning would have been proper (majority opn, at 381 [emphasis added]). Thus, the dispositive inquiry seems to be what the police believed at the time of questioning, not the actual state of defendant’s legal representation. Yet, in the same paragraph, the majority states a second standard, one that is quite different: If it had been shown that the relationship had in fact terminated, the questioning would have been proper (majority opn, at 381). The standard thus becomes one not of police knowledge but of actual representation.
The majority does not indicate which of its two standards is actually to be applied by trial courts, but both pose difficulty. *391 If cases like this are to now turn on police knowledge, what the police should have known — rather than actual circumstances, we are returned to the analysis we abandoned for good reason in Bartolomeo. Indeed the majority recognizes the problems posed by the Bartolomeo analysis (majority opn, at 378), yet apparently embraces a similar analysis here. On the other hand, if cases like this are to turn on the People’s ability to prove the termination of representation, it fails to explain why that burden should be placed on the People when in Rosa we found just such a burden unfair. I find neither formulation acceptable and conclude that inasmuch as defendant failed to establish that the attorney-client relationship existed at the time of the conversations with the informant, his motion to suppress was properly denied and the judgment should be affirmed.
Judges Titone, Hancock, Jr., Bellacosa and Smith concur with Chief Judge Kaye; Judge Simons dissents and votes to affirm in a separate opinion.
Order reversed, etc.

. The same attorney apparently represented others in the lineup, including Michael Davenport, a codefendant who subsequently became the police informant in this case.

. The successor attorney filed a notice of appearance on the day defendant was questioned by the Manhattan police, January 26, but it was unclear whether the notice was filed before or after the questioning and the issue of representation did not turn on the successor attorney’s appearance.

. Moreover, contrary to the statement of the majority (see, majority opn, at 375, n 1), Davis’ right to counsel did attach under the rule in People v Cunningham (49 NY2d 203, supra) and statements she made thereafter were suppressed. The question was whether the defendant, having once invoked her right to counsel, could thereafter waive it without counsel being present. We held that she could because she was at liberty, had an extended opportunity to obtain counsel and yet failed to do so.