(June 15, 1995)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH P. BROWN, Appellant. [628 NYS2d 211] —Casey, J. Appeal from a judgment of the County Court of Tioga County (Siedlecki, J.), rendered May 17, 1991, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), robbery in the first degree, burglary in the first degree and grand larceny in the third degree.

The body of the victim, a 91-year-old man, was found on the bed in his mobile home in the Village of Waverly, Tioga County. The victim's throat had been cut with a sharp instrument which caused him to bleed to death, and the mobile home had been partially destroyed by fire. The victim was known to have kept large sums of cash in his mobile home. However, subsequent to the murder, a search for money by the victim's son revealed none.

The investigation of the murder ultimately focused on defendant. Although he initially made a written statement denying any involvement in the murder, he admitted the earlier commission of two burglaries in an abandoned building in the vicinity of defendant's mobile home. When defendant indicated that he did not want to be questioned further, the questioning ceased. Shortly thereafter, defendant was informed that he would be charged with burglary and he was arrested.

While defendant was being questioned, other members of the investigation were interviewing defendant's girlfriend, Debbie Frisbee. Frisbee stated that she had spent the early evening hours on the night of the homicide with defendant and that he left her shortly before the fire at the victim's mobile home. In her written statement, Frisbee admitted that when defendant returned home on the night of the homicide he had money that he did not have earlier in the evening. Frisbee did not, however, directly implicate defendant and she was released.

Later, after Frisbee met with her sister and her brother-in-law, all three returned to the Sheriff's substation where Frisbee gave a second statement. In it she revealed that defendant had returned home on the night of the homicide covered with

blood and carrying a pillow case with the victim's last name printed on it, which contained bundles of money wrapped with rubber bands in the approximate amount of $30,000. According to Frisbee, defendant removed his bloody clothes, placed them in the pillow case, showered and left the apartment with the pillow case. Frisbee stated that defendant admitted killing the victim and further admitted setting fire to the mobile home. Frisbee also gave the police a handwritten note addressed to defendant in which she apologized for telling the police what she knew. Upon obtaining this note and Frisbee's statement, the District Attorney withdrew the pending burglary charge against defendant and, pursuant to an order signed by the Judge who conducted the arraignment on the burglary charge, defendant was released from the County jail.

The police immediately sought to reinterview defendant and he was advised of his *Miranda* rights. When confronted with Frisbee's second statement and handwritten note, defendant responded to the officers, "So you know, huh." Defendant then described to the officers how he entered the mobile home, unaware that the victim was there, until the victim came at him with a knife. Defendant admitted kicking and punching the victim and knocking the victim back on the bed. Defendant stated that he was bloody from the victim's wounds and that he collected the money that was laying on the open floor, put the money into a pillow case, set some papers which he found there on fire and left the mobile home. Defendant claimed he later threw the money and his clothes into the river. Defendant drew diagrams of the mobile home and the area where he disposed of the clothes and money. When defendant thereafter refused to sign a statement, the questioning ceased.

After defendant was indicted, *Huntley* and *Wade* hearings were conducted and Frisbee appeared at these hearings as a witness. She recanted her second statement, claiming that it had been coerced by the police. County Court assigned an attorney to represent Frisbee, who then claimed her right against self-incrimination. At the conclusion of the hearings, County Court denied defendant's omnibus motion to, *inter alia*, suppress defendant's statements. At trial, defendant testified on his own behalf. Frisbee did not testify. Following the verdict, defendant was sentenced to an indeterminate term of imprisonment of 25 years to life on each of the murder convictions, $8^{1}/_{3}$ to 25 years on the burglary and robbery convictions, and $2^{1}/_{3}$ to 7 years on the larceny conviction. All sentences were concurrent except for the burglary conviction, which was to run consecutively with the first murder conviction. Defendant appeals.

Defendant contends that his right to counsel and right to remain silent were violated when the police reinterrogated him following his release from custody on the burglary charge. We find no merit in defendant's claim that his right to counsel attached as a result of his "acceptance" of assigned counsel on the burglary charge and was subject to the rule established in *People v Rogers* (48 NY2d 167). There is no evidence that defendant actually requested counsel or that assigned counsel was actually representing defendant on the burglary charge (*see, People v Rosa*, 65 NY2d 380, 387-388; *People v Stanko*, 199 AD2d 992, *lv denied* 83 NY2d 810). Accordingly, defendant's right to counsel arose not under the *People v Hobson* (39 NY2d 479) line of cases but under the *People v Di Biasi* (7 NY2d 544) line of cases, which holds that the right attaches upon the commencement of formal proceedings (*see, People v West*, 81 NY2d 370, 373), in this case the filing of the felony complaint containing the burglary charge. Thus, even if defendant remained in custody on the burglary charge, he could waive his right to counsel in the absence of counsel and answer questions on any matter unrelated to the burglary charge (*see, People v Ruff*, 81 NY2d 330, 333-334). We conclude that the homicide and other crimes that occurred in the victim's mobile home were unrelated to the pending burglary charge, which was not part of the same criminal transaction as the homicide and occurred at least one month earlier in a different building (*cf., People v Carl*, 46 NY2d 806; *People v Vella*, 21 NY2d 249).

In any event, it is the general rule that "[w]hen the prior charge has been disposed of by dismissal or conviction, the indelible right to counsel disappears and * * * defendant is capable of waiving counsel on the new charge" (*People v Bing*, 76 NY2d 331, 344; *see, People v Mann*, 60 NY2d 792). That the dismissal of the burglary charge was procured so that the police could question defendant on the unrelated homicide does not alter the general rule (*see, People v Robles*, 72 NY2d 689). We reject defendant's claim that the dismissal of the burglary charge was a sham, for there is no evidence that the dismissal was temporary or that the charge was ever reinstated or that the police had any further interest in that crime.

When the release order was delivered to defendant at jail, defendant stated that he did not know if he wanted to talk to the officer and was informed that he did not have to talk if he did not want to. The officer advised defendant of his *Miranda* rights and afterward defendant proceeded to answer questions about his activities on the night of the homicide. When defendant was confronted with Frisbee's letter and statement, he

confessed to the crimes charged, but refused to give a written statement. Upon his refusal and request for a lawyer, the questioning stopped. Prior to his oral confession, defendant did not advise the officers that he did not wish to answer their questions outside the presence of counsel (*see*, *People v Cyrus*, 170 AD2d 526, *lv denied* 78 NY2d 921). Nor did defendant invoke his right to remain silent until after he made his oral confession (*see*, *People v King*, 191 AD2d 513, *lv denied* 81 NY2d 1015), and the police " 'scrupulously honored' " his subsequent request to cease questioning (*see*, *People v Moore*, 168 AD2d 463, 464, *lv denied* 77 NY2d 880). For the reasons previously set forth, we reject defendant's claim that his confession should have been suppressed.

Defendant further claims error in the prosecution's failure to comply with CPL 710.30 by timely notifying defense counsel of their intention to use defendant's initial written statement. Although we agree with defendant that County Court erred in allowing the prosecution to use defendant's statement without requiring a showing of good cause for the two-month delay in providing notice of the statement to the defense, we find the error to be harmless given the overwhelming evidence of defendant's guilt (*see*, *People v Richards*, 207 AD2d 660, *lv denied* 84 NY2d 1037). This proof included defendant's inculpatory oral confession in which he admitted the crimes charged; the testimony of a witness placing defendant near the victim's home at about 10:00 P.M. on the night of the homicide; the testimony of defendant's friend that defendant, who was unemployed, stated to him on the day after the homicide that he, defendant, had $1,000 to spend; and the testimony of an employee of the County Jail who heard defendant brag to another inmate about killing the victim. Thus, there is no likelihood that defendant would have obtained an acquittal if County Court had suppressed defendant's written statement, which was generally exculpatory.

We find no merit in defendant's contention that he was deprived of effective assistance of counsel as the result of the prosecution subpoenaing a secretary of defense counsel, who testified that Frisbee brought a cash retainer to the defense attorney's law office. No confidential communication was revealed, nor was any conflict of interest which interfered with his attorney's representation created. The testimony of this witness did not impede defendant's right to effective representation in any way. Furthermore, her testimony was material and relevant since it revealed that Frisbee, who was unemployed, brought a significant amount of cash, which was what

was taken from the victim's mobile home, to defense counsel's office.

The defense cannot seriously claim that Frisbee was intimidated by the prosecution and afraid to appear as a witness for the defense when the prosecution offered to grant Frisbee immunity from prosecution for the crimes of perjury, if the defense called her as a witness at trial (cf., *People v Priester*, 98 AD2d 820). Even with this immunity offer, Frisbee was not called by the defense. Viewed in the role that Frisbee played in these events, it cannot be said that she was "favorably disposed" toward the prosecution, thus entitling defendant to a missing witness charge (see, *People v Gonzalez*, 68 NY2d 424, 429). The prosecution's reference to Frisbee's failure to testify at trial was not unduly prejudicial given that such comments were made in response to defense counsel's similar comments during his summation.

The delay involved in the disclosure of *Brady* and *Rosario* materials did not deprive defendant of a fair trial. The materials were furnished before the trial and County Court delayed the trial for 24 hours to permit defense counsel to review the material and formulate a strategy, and the witnesses whose notes were supplied could have been recalled by the defense as witnesses. In these circumstances defendant was not substantially prejudiced, which he was required to demonstrate (see, *People v Banch*, 80 NY2d 610, 617).

Contrary to defendant's contention as to his sentence, we consider the crimes of burglary of the victim's mobile home and murder separate successive acts which allowed the imposition of consecutive sentences. The other errors raised by defendant, including the errors alleged in his *pro se* brief, have been considered and found to be inconsequential. The judgment of conviction should, therefore, be affirmed.

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.